## Donaldson *v.* Wood & Wood.

The acts of the legislature of 1830 and 1832, giving a *lien* for work done or materials furnished in the erection of buildings in the city of New York *upon the fund* in the hands of the owner of the buildings due to the original contractor, apply only to the creditors of the *original* contractors; a creditor of a *sub-contractor* can claim nothing under these acts.

An account verified by the oath of the claimant is an *attested account* within the meaning of those acts.

*It seems,* that *work done* and *materials found,* although not applied to the *building itself,* come within the purview of the acts, if connected with the building and embraced in the contract.

Error from the supreme court. The question in this case was, whether a *creditor* of a *sub-contractor* is entitled to the benefit of the acts of the legislature, passed in 1830 and 1832, giving a *lien* for work done or materials furnished in the erection of buildings in the city of New York upon the fund in the hands of the *owner* of the buildings. *See Statutes of* 1830, *p.* 412, *and Statutes of* 1832, *p.* 181. The facts of the case are fully stated in 17 *Wendell,* 550, *et seq.* The creditor of a sub-contractor brought an action in the New York common pleas and recovered judgment, which was *reversed* by the supreme court. See the opinion delivered by the Chief Justice, 17 *Wendell,* 551, *et seq.* The

plaintiff thereupon removed the record by writ of error into this court, where the case was argued by

*P. A. Cowdrey,* for the plaintiff.

*J. A. Lott & R. H. Morris,* for the defendants.

After advisement, the following opinions were delivered.

By the CHANCELLOR. This case calls for the construction of the statutes of 1830 and 1832, giving to journeymen, laborers, cartmen, sub-contractors, and material men, a claim upon the monies due from the *owners* of buildings, erected in the city of New York, to the *contractors* for the erection of such buildings, in the nature of an hypothec, or an equitable lien upon that fund. The principal question is, whether a mechanic, or cartman, or a day laborer, or a material man, who has labored for or furnished materials to a *sub-contractor* to whom nothing is due, has a right to be paid for his labor or materials out of the monies due from the *owner* of the building to the *contractor,* against whom such sub-contractor has no legal or equitable demand whatever.

The bare statement of the claim appears to be sufficient to satisfy any one that it is wholly inconsistent with every principle of justice and equity. Those who sustain the claim, therefore, are obliged to assume that it was the intention of the legislature to prevent the contractor for the erection of a building, from making *sub-contracts* for any part of the labor or materials ; and that every sub-contractor, and the sub-contractors under such sub-contractor *ad infinitum,* must be considered as the mere agents of the original contractor. Such a construction, however, is directly in conflict with the language of the act of April, 1830, the first section of which recognizes the right of the original contractor to make sub-contracts, and gives to his sub-contractors, as such, a lien upon the money due to him from the owner of the building. The construction contended for by the counsel for the plaintiff in error would, on the contrary, render the original contractor liable to the journey-

Donaldson v. Wood.

men employed by Donaldson to prepare the flagging and curb stones, to the cartmen who drew them from the stone yard, and to the paviors who laid them down, as the plaintiff himself was a mere sub-contractor for this part of the work included in the original sub-contract of Tingley ; and if Tingley was a mere agent of Russell the contractor, Donaldson was a mere sub-agent, and his day laborers who did the work-are the real creditors of Russell.

Legal hermeneutics, when applied to the construction of statutes, teach us to reject a construction which is contrary to natural justice and equity, or which will necessarily be productive of practical inconvenience to the community, unless the language of the lawgiver is so plain and explicit as not to admit of a different construction. To give a correct interpretation to the legislative will, where a statute was intended to remedy the injurious operation of a previous rule, or principle of law, the court should place itself in the situation of the legislature which passed the statute : that is, to contemplate, in the first place, the law as it previously existed, and the necessity and probable object of the change, and then give such a construction to the language used by the lawmakers in providing the remedy, as to carry their intention into effect, so far as it can be ascertained from the terms of the statute itself. Here the evil to be remedied was not that a contractor, who had once paid for labor and materials employed in the construction of a building, to the person employed by him to do such labor or to furnish such materials, was exempted from paying therefor a second time to persons who had no legal or equitable claim upon him, by contract or otherwise ; but the common law rule being that a creditor had no specific lien upon a fund belonging to his debtor, although such fund had been created by the property or the labor of such creditor, the mischief of the rule in relation to these building contracts was, that the contractor who honestly owed his sub-contractors and workmen and material men for their labor and materials in the construction of the building, instead of providing for the payment of their debts out of the fund which was coming to

him from the owner of the building for such labor and materials, dishonestly put the whole fund into his own pocket, and left them to their remedy by suits against an insolvent debtor, or assigned it for the benefit of other creditors who had no equitable claims upon that fund. It is evident therefore, from an examination of these statutes, that the remedy which the legislature intended to give to the journeyman, laborer, cartman, sub-contractor, or material man, was a remedy as between debtor and creditor merely, by making the claim of the creditor a privileged debt to be paid out of the fund due to his debtor. But I am satisfied that no court is authorized to extend these statutory provisions by judicial construction, so as to make a fund, which legally and equitably belongs to the *contractor* exclusively, answerable for the debts of *sub-contractors*, to whom the original contractor owes nothing.

If any doubt could arise upon the construction of the first section of the act of April, 1830, upon the principles of interpretation to which I have adverted, the language of the subsequent sections appears to render the intention of the legislature perfectly plain. By the second section of the act the owner of the building is to furnish a copy of the attested account, delivered to him, to his contractor; and if there shall be any disagreement between such contractor and *his creditor*, they may, by amicable adjustment between themselves, or by arbitration, ascertain the true sum due," &c. So, in the third section the words *his journeymen*, are used in reference to the original contractor; and in the fourth section, if the *contractor* shall not pay the amount to *his creditor*, the owner shall pay, &c., and the amount may be recovered from such owner *by the creditor of the said contractor*. All this is perfectly plain and intelligible if we suppose the legislature were providing for the adjustment and payment of a debt which was due from the contractor to his journeyman, cartman, laborer, sub-contractor, or material man, but it is senseless when applied to an account against a sub-contractor merely, and presented by a person who may have been a perfect stranger to the original contractor. The account presented in this case does

Donaldson v. Wood.

not profess to be an account against Russell, the contractor ; nor is he even alluded to, either in the account or in the affidavit annexed thereto, or in the notice served upon the owners of the building. It is not necessary, therefore, to consider what would have been the effect of his neglect to give notice to the owners, of his intention to dispute the claim, if the account upon its face had purported to be against him as the debtor of Donaldson for work done under the contract. He might perhaps in that case have been considered as assenting to the claim made against him ; although he should afterwads show that it was altogether false or fictitious.

Perhaps a modification of these statutes may be desirable, so as to give to those who have done work upon the building and furnished materials therefor under an agreement with a sub-contractor, the same remedy against the fund due to him from the original contractor, as the creditors of the latter now have against the fund due to him from the owner of the building. Such a provision would be strictly in accordance with the principle of equitable lien or privileged claim against the fund belonging to the debtor, which has been adopted by the present statutes. But to carry the principle beyond that, and to make the original contractor liable for the debts of his sub-contractors *ad infinitum*, would necessarily be injurious to the mechanics themselves ; particularly to those of limited means, for it would be unsafe in that case for the principal contractor to make any payments, or advances to the sub-contractors, who had undertaken to do particular portions of the work, until their several jobs were completed, and they had furnished to him conclusive evidence that all the journeymen, cartmen, and day laborers employed by them respectively had been paid and satisfied in full ; and the various sub-contractors in the mean time would have to raise the money some other way to pay such journeymen and laborers, or those who actually did the work would have to wait until the sub-contract was fulfilled, so that they and the sub-contractor could be paid off by the original contractor at the same time. Those, therefore, who wish to promote the

true interests of the industrious classes, cannot desire a construction of the present statutes, or the adoption of a principle in future legislation, the probable effect of which would be to suspend the payments of the daily pittance, which the journeyman frequently wants for the immediate use of himself and his family; or to compel the great mass of industrious and enterprising mechanics in our cities, who have as yet acquired no capital and but little credit, to become the mere journeymen and day laborers of a few wealthy contractors, by placing them in a situation in which it will be impossible for them to obtain sub-contracts for a part of the work, which the master builders have contracted with the owners to have done.

In reference to the fourth point of the defendants in error, it is only necessary for me to say that I have no doubt that an account made out against the contractor, and verified by the claimant's own oath, that the balance of such account is justly due to him from such contractor for labor done, and materials furnished to him under his contract for the erection or furnishing the building, is an *attested* account within the meaning of the statute, and that the legislature did not intend to require the claimant to produce legal evidence of the correctness and justice of his claim in the first instance. I also think the statutes extend to all such work as is usually done under building contracts in the city of New-York, although it is not done upon the building itself in the strict sense of the term, provided such work is embraced in the contract for the erection of the building.

As I have no doubt that the supreme court gave a correct construction to the statutes of 1830 and 1832, I shall vote to affirm the judgment of that court.

By Senator VERPLANCK. It is not very strange that the New-York common pleas and the supreme court have differed in their construction of the act in question in this case. The difficulty is in the language and provisions of the act; the several sections, of which are hardly reconcileable with one another.

Donaldson v. Wood.

The very general terms used in the first section show that the legislature wished to provide for the protection of every person whatsoever, doing work or providing materials for any building in the city of New-York, against the fraud of the contractor between him and the owner. But the several provisions of the act also show, that the case of mechanics or meterial-men, furnishing materials or labor, not to the first contractor but to a sub-contractor under him, was not taken into view. The question now is, shall such an enlarged construction be given to the law as to cover this omitted, and not anticipated, though very common occurrence ? I think the construction of the supreme court, which excludes this case, is not only by far the most consistent interpretation, but on the whole is the safest in operation.

The statute is remedial and should be construed favorably. But favorably to whom ? The effect on the owner is the same in either view of the case. Here are then left two classes of mechanics, whose interests come in collision. It was not intended that the remedy for one class should be used to the injury of the other. Now if the originally contracting mechanic is subject to have the funds due him and remaining in the owner's hands applied to make good to other mechanics, or to the sellers of materials, the deficiencies of a sub-contractor whom he has already paid, this would prove a very serious impediment to all building by contract, as well as cause great hardship in numerous cases—some of which have been pointed out by the chief justice. Thus the loss occasioned by the insolvency of a middle-man would be transferred from the mechanic who deliberately trusted to him, to another who never gave him credit at all, and who moreover had furnished him means towards discharging his debts.

Besides, the construction contended for by the New-York common pleas leads to the result that the same fund in the hands of the owner would be legally liable to several different sets of claimants : as in this instance, first to Tingley, the sub-contractor, then to Donaldson, the plaintiff below, a master mechanic working for Tingley, then to the material-men who furnished stone to Donaldson, and again perhaps

to others. Besides the inconvenience of this, as the fund cannot meet but one claim, this construction affords the same facility to fraud and collusion as any other. Judge Irving has said, that "it was not intended that the contractor should sell out his contract and thus defeat the law, and destroy the lien which others have in the helping him to perform it." If fraud and collusion be once designed, that end can be as well effected by the sub-contractor claiming under the act, exhausting the fund and thus defeating those who trust to his credit, as in any other mode.

On the whole, though the construction sustained by the supreme court undoubtedly leaves room for some fraud and hardship, yet it does not more so than the other and less consistent interpretation. I think, therefore, that such frauds or hardships had better be left to be guarded against by well considered and explicit legislative enactment, than to be attempted to be remedied by a judicial construction, which after all is likely to cause as much injury to one class of persons employed in building, as it may prove serviceable to another.

I am for affirming the judgment of the supreme court.

On the question being put, *shall this judgment be reversed?* the members of the court divided as follows:

*In the affirmative:* Senators HUNT, NICHOLAS, PAIGE, PECK, WORKS—5.

*In the negative:* The PRESIDENT of the Senate, the CHANCELLOR, and Senators DICKINSON, FOX, HAWKINS, HULL, HUNTINGTON, JOHNSON, JONES, H. A. LIVINGSTON, MAYNARD, MOSELEY, SKINNER, SPRAKER, STERLING, VERPLANCK, WAGER—17.

Whereupon the judgment of the supreme court was AFFIRMED.