PEOPLE ex rel. TUCKER v. D'OENCH. 33

First Department, March Term, 1887.

# THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN C. TUCKER v. ALBERT F. D'OENCH, Superintendent of Buildings of the City of New York, Respondent.

*Construction of the act providing for the erection of buildings in the city of New York—chapter 410 of 1882, as amended by chapter 456 of 1885 — power of the board of examiners to permit an equally good or more desirable plan of construction to be adopted — the jurisdiction of the board can be attacked in a collateral proceeding.*

The relator, who was the owner of a two-story and basement brick building on West Thirteenth street, in the city of New York, being desirous of adding thereto two additional stories, thereby raising it from a height of forty feet to a height of eighty-three feet and six inches, prepared plans and specifications for the proposed alteration, from which it appeared that he did not intend to make the floors of the additional stories fire proof, as was provided in the laws relating to that subject, but intended to construct them of wood; these plans and specifications were presented to the respondent, the superintendent of buildings, who refused to issue his certificate allowing the additions to be made.

After such refusal the relator applied to the board of examiners for permission to make the addition under the authority of that portion of section 504 of chapter 410 of 1882, as it was amended by section 31 of chapter 456 of 1885, which provides that "in cases in which it is claimed by an owner, in person or by his representative, that the provisions of this title do not directly apply, or that an equally good or more desirable form of construction can be employed in any specific case than that required by this title, then such person shall have the right to present a petition to the board of examiners, and may appear before said board and be heard; and said board shall consider such petition in its regular order of business, and as soon as practicable render a decision thereon. The said board of examiners are hereby authorized and empowered to grant or reject such petition, *and their decision shall be final.* If such decision is favorable to said petitioner a certificate *shall* be issued by the superintendent of buildings in accordance therewith."

The board of examiners having, by a vote of five to two, resolved to grant the petitioner's application to build his building in the manner specified, and the defendant, who voted against the allowance of the application, having refused to issue the certificate, the relator applied for a writ of *mandamus* compelling him to do so.

*Held,* that the application could not be maintained, upon the ground that the provisions of the act did not directly apply to the relator's case, as the additions proposed to be made by him were clearly included and controlled by them.

That the power to permit "an equally good or more desirable form of construction" to be employed, was not intended to authorize the board to allow wood to be used in place of the incombustible substances mentioned in the act, but

34        PEOPLE ex rel. TUCKER v. D'OENCH.

FIRST DEPARTMENT, MARCH TERM, 1887

only to permit some other substance to be used, if any could be found, which should appear to be equally as good and more desirable than the iron and brick previously mentioned.

That as no evidence had been laid before the board which tended to show that the proposed plan was equally as good and more desirable than that mentioned in the statute, the decision made by it was void for want of jurisdiction.

That as this want of jurisdiction deprived the vote or resolution of the board of all authority, even when brought in question in a collateral proceeding, the application for a *mandamus* should be denied. (BRADY, J., dissenting.)

*Semble*, that the other provisions of the law require the concurrence of both the board of examiners and the superintendent to authorize any modification of the building laws. (*Per* VAN BRUNT, P. J.)

APPEAL from an order made at Special Term denying a motion for a peremptory *mandamus*.

*Almon Goodwin*, for the appellant.

*William L. Findley*, for the respondent.

DANIELS, J. :

The relator proposes to make additions to a brick building known as 29 West Thirteenth street in the city of New York. It is now two stories above the basement, and about forty feet in height. It is proposed by him to put on two additional stories, raising it to a height of eighty-three feet and six inches. The adjoining buildings on each side are about the same height. They have been erected with party-walls, to the expense of which the relator contributed, which appear to be sufficient to allow this addition to be made to his own building. In putting on the additional stories the material of the front and rear walls will be brick and iron, and being free from combustible material will be without exception. But the floors of the additional stories are proposed to be made of wood, and it is on that account that the respondent refused to issue his certificate allowing the additions to the building to be made. After such refusal an application was made to the board of examiners for permission to make the additions which the superintendent of buildings had refused to sanction. This application was made under the authority of the consolidation act as it has been amended by chapter 456 of the Laws of 1885, and to bring it within section 504 of the consolidation act, as it was amended by section 31 of the act of 1885, it was stated in the relator's petition to the board that

PEOPLE ex rel. TUCKER v. D'OENCH. 35

First Department, March Term, 1887.

an equally good and more desirable form of construction can be and is proposed to be employed by him than that provided for in other sections of the act. The examiners, in their action upon the petition, by a vote of five to two, resolved to grant the petitioner's application, allowing him to make the additions to his building in the manner already mentioned. The superintendent of buildings was a member of the board, and one of the persons voting against the allowance of the application, and afterwards declined to issue the certificate, notwithstanding the vote which had been given in favor of the applicant. And it was to oblige him to issue the necessary certificate sanctioning the additions proposed to be made to the building that the application followed for the *mandamus* that was denied by the order from which the appeal has been taken, and whether the superintendent was legally right in his refusal to act is the point upon which the disposition of the appeal must depend.

By section 492 of chapter 410 of the Laws of 1882, as amended by section 21 of chapter 456 of the Laws of 1885, it was provided that buildings afterwards erected in the city of New York, exceeding seventy feet in height, should be fire-proof with brick walls and wrought or cast iron beams, or wrought iron columns with wrought iron beams, and filled in with what would be fire-proof material between the beams. And by section 498 of the act of 1882, as it was amended by section 27 of the act of 1885, it was declared that no building, already erected, should be enlarged, raised, altered or built upon in such a manner that, were such building wholly built or constructed after the passage of this act, it would be in violation of any of the provisions of this title. These two sections required the additions proposed to be made to the relator's building to be constructed substantially in the manner described therein, which would render it fire-proof. It was, however, provided by section 504 of the act of 1882, as it was amended by section 31 of the act of 1885, that the superintendent, with the consent and approval of the board of examiners, should be at liberty "to vary or modify the provisions of this title, upon application therefor in writing only in case of alteration of old buildings, or the use of party-walls, belonging to different owners, where the same cannot be taken down, and where there are practical difficulties in the way of carrying out the strict letter of

86      PEOPLE ex rel. TUCKER v. D'OENCH.

FIRST DEPARTMENT, MARCH TERM, 1887.

this law, so that the spirit of the law is observed, the public safety secured and substantial justice done." But the relator did not proceed under this portion of the section ; neither could he do so, for that required the concurring action of both the superintendent and the board of examiners. What he did do was to apply under the succeeding portion of the section which declares that " in cases in which it is claimed by an owner in person, or by his representative, that the provisions of this title do not directly apply, or that an equally good and more desirable form of construction can be employed in any specific case than that required by this title, then such person shall have the right to present a petition to the board of examiners and may appear before such board and be heard, and said board shall consider said petition in its regular order of business, and, as soon as practicable, render a decision thereon. The said board of examiners are hereby authorized and empowered to grant or reject such petition, and their decision shall be final. If such decision is favorable to said petitioner a certificate shall be issued by the superintendent of buildings in accordance therewith." It was stated in the petition that the provisions of the act did not apply directly to the case of the petitioner, but no facts were disclosed which would render it inapplicable. The sections already referred to, on the contrary, show that they were applicable to the case of the petitioner, and by clear language included and controlled the additions proposed by him to be made to his building. From this part of the section, therefore, he could derive no possible advantage, and the case remained to be considered upon the affirmation that an equally good and more desirable form of construction can be and is proposed to be employed by him. No evidence seems to have been taken by the board of examiners in support of this affirmation, but the board acted upon the petition itself, and the answers returned by the relator to the questions presented to him, accompanying his application for liberty, to make the additions to his building, and by those answers the fact was clearly disclosed that the floors designed to be added in carrying up the building are to be constructed of wood, and it was such floors that the board of examiners must have considered in the vote taken by its members, to be a more desirable form of construction than that prescribed by the preceding

sections of this act. This was very clearly a misapprehension on the part of the voting majority of the board of examiners, for it will readily be seen that a construction of the floors by beams and lumber is not equally as good or more desirable than a construction in the form prescribed by the provisions of the statute, requiring that to be of iron and other fire-proof material. The statute conferred no authority on the examiners to allow combustible material to be used in place of the incombustible substances mentioned and referred to in its preceding sections. It was entirely obvious that it was not the intention of the law to allow the examiners to permit wood to be used in place of fire-proof material; but what was intended was that they might permit some other substance to be used which should appear to be equally as good, if that could be found, and more desirable than the iron and brick previously mentioned. What that might be was not defined by the act, but this part of it was enacted in such flexible terms as to include such material if it should afterwards be discovered or found. It was not to permit the mode of construction allowed before this law was enacted to be followed in the erection or the extension of so high a building, but still to require that to be made fire-proof, either by employing the material already prescribed or some other that might afterwards appear to be equally good and more desirable. But, in any event, the building has been required to be made fire-proof. No such mode of constructing the additions to the building was made to appear before the examiners; but what they were applied to for was liberty to construct the internal portions of the additions with wood, and the right to do that the statute did not include within the authority conferred upon the examiners. It gave them no power to extend liberty to the applicant to make the additions of wood and timber, but only to allow such additions to be made in an equally good and more desirable form of construction than that previously mentioned in the act. And it was to ascertain whether the additions could be made in an equally good and more desirable form of construction, but still of fire-proof material, that the board were empowered to hear the petitioner, and upon that hearing were to consider the petition and render a decision thereon which should be final. Not that the preceding mode of construction, which it was the object of the statute to disapprove

and condemn, should be restored and used, but whether the additions could be made fire-proof in some equally good and more desirable form than that which the legislature by the act described. This inquiry the examiners evidently failed to pursue, for there was nothing before them upon which they could say or decide that an equally good mode of making the additions had been mentioned and described by the petitioner, to that previously prescribed by the statute; and having nothing before them sustaining that inquiry, or a decision to be made upon it, what they did do was without the authority of the law, and although they made the decision which they did, as it was without authority, it was beyond their jurisdiction and of no force and effect by way of supporting the application which was made for the writ.

Before they could extend this liberty to the petitioner, it was necessary that they should have some evidence before them, even though it might be slight, that the manner in which it was proposed to make the additions was equally as good and more desirable than that mentioned in the statute, which consisted in the use of incombustible materials. They had no such evidence, and the decision which they made was, for the want of it, without jurisdiction. (*Staples* v. *Fairchild*, 3 Comst., 41, 46; *Van Alstyne* v. *Erwine*, 1 Kern., 331, 370; *Skinnion* v. *Kelley*, 18 N. Y., 355, 356; *Frees* v. *Ford*, 2 Seld., 176-178.) And this want of jurisdiction deprived the vote or resolution of the board of all authority, even when it may be brought in question, as it has been now, in a collateral proceeding. (*Roderigas* v. *East River Savings Institution*, 63 N. Y., 760-764; *Cagwin* v. *Town of Hancock*, 84 id., 532-571; *Davidsburgh* v. *Knickerbocker Life Ins. Co.*, 90 id., 526-530.) And as the decision of the examiners was without authority of law and not within the power by the statute committed to their jurisdiction, as long as it gave them no authority to substitute combustible for incombustible material, it failed to support the application for the writ of *mandamus*, and the order should be affirmed, with costs.

Van Brunt, P. J.:

I cannot concur with Mr. Justice Brady in the conclusion to which he has arrived upon this appeal. The construction put upon the building act in his opinion seems to me to render nugatory

some of its most positive provisions. Section 492 of the consol-idation act (chap. 410 of 1882), as amended by chapter 456 of 1885, section 21, provides that "Every building hereafter erected (for which plans have not been heretofore filed), the height of which exceeds seventy feet, shall be built fire-proof." Then follow provisions regulating the use, composition and perfection of manufacture of metal columns, of brick arches, and other material to be used in the construction of such fire-proof building. Then follows section 498, which provides as follows: "No building already erected or hereafter to be built in said city shall be enlarged, raised, altered or built upon in such manner that were such buildings wholly built or constructed after the passage of this act it would be in violation of any of the provisions of this title."

The effect of these provisions seems to be that no building erected before the passage of this act can be raised beyond the height of seventy feet without the same is made fire-proof. The building in the case at bar has never been raised above forty feet in height, but upon either side have been constructed buildings having party walls of the height of eighty-five feet, which were constructed at joint expense upon the land of the relator and his neighbors, and the relator proposes to raise his buildings to the height of eighty-three feet. Applying the provisions of section 498, if such addition is made it must be fire-proof. We are then brought to the question as to whether there is any provision in the act referred to, in pursuance of which the right of the law as to the fire-proof character of future constructions exceeding seventy feet in height can be abated. Section 504 provides that the super-intendent of buildings shall have power to vary or modify the pro-visions of this title, upon application therefor in writing, only in case of alteration of old buildings where the same cannot be taken down, and where there are practical difficulties in the way of carry-ing out the strict letter of this law, so that the spirit of the law is observed, the public safety secured and substantial justice done.

This portion of this section seems to confer upon the superin-tendent of buildings in the case of the alteration of old buildings, and in such a case only, authority to vary or modify the provisions of this title where such variation or modification does not contravene the spirit of the law or endanger the public safety, and is consistent

**40**     PEOPLE ex rel. TUCKER *v.* D'OENCH.

FIRST DEPARTMENT, MARCH TERM, 1887.

with public justice. But the superintendent of buildings cannot permit these variations or modifications solely guided by his own judgment. Before the superintendent can permit these modifications he must get the approval of a board of examiners, constituted as the law directs, to the proposed modifications. The act says . " But no such deviation shall be permitted except a record of the same shall be kept by said superintendent of buildings, and a certificate be first issued to the party applying for the same ; such certificate shall not be issued until a board of examiners (here follows the provisions as to the composition of the board of examiners) shall also approve the proposed modifications of the law." .This makes a complete system in respect to old buildings which it is desired to raise to a height above seventy feet. Neither the board of examiners alone nor the superintendent of buildings alone can waive any of the provisions of the law ; both the board and the superintendent must concur in the opinion that the proposed modification is consonant with the spirit of the law, and does not endanger the public safety, before the stringent provisions of the law can be waived. Either may put a veto upon the issuance of such a certificate. The legislature did not intend that this extraordinary power should be used unless grave necessity require it.

These provisions seem to be a complete system having relation to the alteration of old buildings, and to apply directly to the case of the relator. His application was to be permitted to " alter an old building" by raising it from forty feet to eighty-three feet in height. It involved " the use of party-walls belonging to different owners," and the claim was that there were " practical difficulties in the way of carrying out the strict letter of the law." But it is said that the legislature meant nothing by the foregoing provisions, and that in any case the board of examiners may alone authorize the issuance of the certificate if the applicant only says in his petition that the provisions of this rule do not directly apply.

The language upon which this extraordinary claim is founded is as follows : " In cases in which it is claimed by an owner, in person, or by his representative, that the provisions of this title do not directly apply, or that an equally good or more desirable form of construction can be employed in any specific case than that required by this title, then such person shall have the right to present

a petition to the board of examiners, and may appear before said board and be heard ; and said board shall consider such petition in its regular order of business, and as soon as practicable render a decision thereon.    The said board of examiners are hereby authorized and empowered to grant or reject such petition, and their decision shall be final.    If such decision is favorable to said petitioner a certificate shall be issued by the superintendent of buildings in accordance therewith."

It will be seen that, if the language is construed literally, the claim, extraordinary as it appears, is well founded.    The statute does say, in so many words, that all that is necessary to avoid the veto power, so carefully given to the superintendent of buildings, in respect to modifications of the law, so far as it affects alterations in old buildings is for the owner to claim in his petition that the provisions of the law do not directly apply to his case and that then all the barriers so carefully erected by the legislature against modifications have been successfully evaded and the board of examiners are all powerful and utterly independent of the superin tednent of buildings.    It is, however, a well settled rule in the construction of statutes that the legislative intent must govern even where such construction seems to run counter to the letter of the law.

In *People ex rel. Wood* v. *Lacombe* (99 N. Y., 43 at page 49) the court says :  " In the interpretation of statutes, the great principle which is to control is the intention of the legislature in passing the same, which intention is to be ascertained from the cause or necessity of making the statute as well as other circumstances.    A strict and literal interpretation is not always to be adhered to, and where the case is brought within the intention of the makers of the statute, it is within the statute, although by a technical inter- pretation it is not within its letter.    It is the spirit and purpose of a statute which are to be regarded in its interpretation ; and if these find fair expression in the statute, it should be so construed as to carry out the legislative intent, even although such construction is contrary to the literal meaning of some provisions of the statute.    A reasonable construction should be adopted in all cases where there is a doubt or uncertainty in regard to the intention of the law makers. These general rules are upheld by numerous authorities.    (*People ex*

42        PEOPLE ex rel. TUCKER v. D'OENCH.

FIRST DEPARTMENT, MARCH TERM, 1887.

*rel. Twenty-third Street R. R. Co.* v. *Commissioners of Taxes*, 95 N. Y., 558; *Burch* v. *Newbury*, 10 id., 389; *Oswego Starch Factory* v. *Dollaway*, 21 id., 461; *People* v. *N. Y. C. R. R. Co.*, 13 id., 78; *Donaldson* v. *Wood*, 22 Wend., 397; *Watervliet Turnpike Co.* v. *McKean*, 6 Hill, 619, 3 Bingham's R., 193; *Commonwealth* v. *Kimball*, 23 Pick., 370.)

In the case quoted from the court, applying the rule stated, held that the legislature's declaration that the act in question should take effect " January 1, 1885," should be read as if it said " January 1, 1885, at twelve o'clock, noon." (See 99 N. Y., 54.) In *Burch* v. *Newbury* (*supra*) the words " first day of July " were read as " first Monday of July."

In *People ex rel. Twenty-third Street Railroad Company* v. *Commissioners* (*supra*), and *Oswego Starch Factory* v. *Dollaway* (*supra*), the Court of Appeals rejected the literal words and interpretation of the acts relating to the taxation of corporations and rejected their specific requirements, because otherwise the intent of the legislature to subject them to taxation on the actual value of their capital would be defeated.

The legislature could never have intended to stultify itself by providing in the act in question that all that it was necessary to do to evade the law is to have the owner say that the law does not apply, and therefore the inquiry arises, what did the legislature mean. It seems to me that they did not in any manner intend to interfere with the provisions in respect to alterations of old buildings; that all that was intended was to give the board of examiners, in cases to which the law did not apply, and in those cases to which the law did apply but a form of construction varying from the one required in the act was proposed, which, in their judgment, was equally good and more desirable from the peculiar circumstances of the case; but being also fire proof, that being an absolute requirement, the power to authorize the issuance of a certificate, although it was not proposed to comply with the strict letter of the law.

This construction gives full force and effect to all the provisions of the statute and relieves the statute of its seeming incongruities. But it is claimed that the statute says that the decision of the board of examiners shall be final; that they are to be the sole judges as to whether the statute applies or not, as well as sole judges as to

whether an equally good or more desirable form of construction is proposed. It is true that the action of the board may be final in these cases in which they acquire jurisdiction, but the legislature certainly did not intend that simply because an owner may state in his petition that the law does not apply, when it is perfectly clear that it does, that the board of examiners can repeal the whole building law and cause to be issued a certificate; which seems to me to be the claim of the appellant in the case at bar. Due force can be given to every part of the statute without conferring such extraordinary powers, which powers are utterly inconsistent with other parts of the act and operate virtually to give the board of examiners the power to repeal all the provisions of the building law. It seems to me, therefore, that the building, and proposed alteration thereto of the relator, comes directly within the provisions of the building law relating to the alteration of old buildings, and that no certificate can issue without the concurrent action of the superintendent and board of examiners.

The order appealed from should be affirmed, with costs.

Brady, J. (dissenting):

The appellant is the owner of a building known as No. 29 West Thirteenth street in this city, which is twenty-five feet in width, one hundred and three feet in depth and forty feet in length, the outer walls being of brick, stone and iron. Designing to alter it by raising it, he submitted to the superintendent of buildings specifications and plans for the proposed alterations, by which it appeared that he did not intend to make the additional structure fire-proof, as provided by the laws on that subject, and the superintendent, therefore, disapproved of the project. Subsequently the appellant presented a petition on the subject to the board of examiners, in accordance with and by authority of the act of 1885 (chap. 456, § 31), and that board granted the petition. It was asserted in the petition that the provisions of law relating to such alterations did not apply, and that an equally good and desirable form of construction could be and was proposed to be employed by him, as shown in the application. (Schedule " B.") This was done in order to meet one of the emergencies anticipated by the section mentioned, and which expressly provides for such a procedure, authorizing the board

to grant the petition, notwithstanding the apparent departure from a strict compliance with the law, when it appears either that its provisions do not apply to the particular case or an equally good and desirable form of construction can and is to be employed.

The learned justice in the court below, however, refused to grant a *mandamus* to compel the superintendent of buildings to issue a certificate enabling him to avail himself of the action of the board of examiners in his behalf, and hence this appeal. He seems to have been controlled in his judgment by the requirements as to fireproof construction and the assumed absence of any offer of an equally good form of construction as to that element of the application, and said, substantially, that reasons were given in aid of the superintendent's refusal to approve.

In this he seems to have been in error, inasmuch as it is distinctly alleged in the petition that an equally good form of construction was proposed, as shown in the application, referring to schedule " B," which does not appear in the papers, unless the application designated " D " is the one intended. The board, however, having passed upon the petition, with the proposed plan before it and it must be assumed after due consideration of its fitness, has this court the power to reverse its action. It is thought not, inasmuch as the section declares that it shall be final. The object of creating the board, and of permitting a departure from the strict letter of the law was to invoke the judgment of competent persons upon the proposed departure, whose experience and capacity thus secured and employed, would insure the public safety notwithstanding the permission given ; and it must be assumed that the legislature contemplated structures which should be allowed to avoid the injustice or hardship which might ensue if the laws were rigorously applied. It was evidently intended, also, that the decision of the board should be final, not only because it is so expressly declared, but in order to make the proceeding summary, and thus prevent delay in the consummation of the enterprise contemplated. Doubtless this court, if it had the power, would, on the papers presented by the record, have withheld its approval, if the application had been presented here in the first instance, the provisions as to fire-proof constructions commending themselves as valuable, wise, protective and important, and rarely to be departed from, but the legislature

have given to others the authority invoked by the appellant, and successfully.

For these reasons, treating the question considered as one of power, it is thought the order appealed from should be reversed and a *mandamus* ordered. No costs are, however, given to either party of this appeal.

Order affirmed, with costs.