ALFRED J. TYRRELL, Appellant, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent.

*New York city — the commissioner of street cleaning may call out employees on Sunday — extra pay for work on Sundays for all such employees — punctuation in the construction of statutes.*

The words "and extra pay for work on Sundays" in section 1 of chapter 368 of the Laws of 1894, authorizing the board of estimate and apportionment of the city of New York to fix, within certain limits, the compensation of employees in the department of street cleaning in the city of New York, are not limited in their application to "hostlers" employed in that department, but authorize the board of estimate and apportionment, in its discretion, to provide for extra pay for work on Sundays for every man in the employ of the street cleaning department, including section foremen.

*Semble,* that, under the provisions of said section, that "the members of the department of street cleaning shall be employed at all such times and during such hours and upon such duties as the commissioner of street cleaning shall direct, for the purpose of an effective performance of the work devolving upon said department," the commissioner of street cleaning is authorized to call out the employees of the department for work on Sundays if, in his judgment, it is necessary.

The fact that the board of estimate and apportionment in taking action under the statute passed a resolution which provided that the salaries "shall be and are hereby fixed at the amounts stated in the statute," and that, after the presentation to the board of estimate and apportionment of statements of the necessary expense of extra pay for Sunday work, that board, by resolution, fixed the amount to be apportioned to that department at a specified sum, following it with a statement that the above appropriation included all necessary expenses for Sunday work, is conclusive as to the intention to allow compensation for such work pursuant to the provisions of the statute, and raises a fair inference that it was intended to allow it to the persons to whom it might be apportioned in the estimate of the commissioner of street cleaning.

An appropriation having been made for extra pay for Sunday work, it is not important that the amount to be paid to each person who is called upon to perform such work is not fixed, as he is entitled to recover, in an action for such Sunday work, either what his work is actually worth, or at the same rate as his daily week day pay.

The punctuation of a statute is entitled to slight weight in determining its construction, which depends upon what appears to be the intent of the language, taken as a whole, in view of the circumstances surrounding the passage of the act, and the evil which it was intended to remedy.

INGRAHAM and MCLAUGHLIN, JJ., dissented.

APPEAL by the plaintiff, Alfred J. Tyrrell, from a judgment of the Supreme Court in favor of the defendant, entered in the office

of the clerk of the county of New York on the 3d day of February, 1898, upon the decision of the court rendered after a trial at the New York Trial Term before the court without a jury.

*John W. Weed*, for the appellant.

*Theodore Connoly*, for the respondent.

Rumsey, J. :

The plaintiff was for some years section foreman in the employ of the department of street cleaning in the city of New York. In that capacity he was called upon very frequently to work on Sunday. For that work he was not paid, and he brings this action to recover its value. After a trial before the court, without a jury, his complaint was dismissed and from the judgment entered upon the decision of the court he takes this appeal.

On the 26th of April, 1894, by chapter 368 of the laws of that year, the salaries and compensation to be paid to employees in the department of street cleaning were changed. Before that time the pay of each employee had been fixed by an act of the Legislature; but by the statute mentioned above, authority was given to the board of estimate and apportionment to fix the salaries at amounts not to exceed the amounts stated in the statute, which reads as follows: "The annual salaries and compensations of the members of the uniformed force of the department of street cleaning shall be fixed by the board of estimate and apportionment, and shall not exceed the following." Then follows the enumeration of the different officials employed in that department, commencing with the general superintendent and ending with the hostlers, having after the name of each official the maximum amount which might be allowed to him. At the end of this enumeration occurs the following, "and extra pay for work on Sundays." The plaintiff claims that these words apply to each person, the amount of whose salary is stated in the act; whereas, the defendant claims that these words apply simply to the hostlers, whose salary is the last one fixed by the words of the act. In the construction of statutes there is to be considered the condition of affairs existing at the time when the statute was passed; the evil which was sought to be remedied by the passage of it; the circumstances surrounding the subject to which

the statute is applicable, and the condition of the law previous to its passage. (1 Kent Comm. 460, 465 ; *Donaldson* v. *Wood*, 22 Wend. 395 ; *People ex rel. Wood* v. *Lacombe*, 99 N. Y. 49.) From the time of the organization of the State the policy of the law has been to forbid all unnecessary work on Sundays. This prohibition was included in one of the earliest statutes passed by the Legislature, and it was continued in the several revisions down to the time of the Penal Code. By these various revisions before the passage of this act all secular work and labor on Sunday was forbidden, except under certain circumstances, which were particularly specified in the statute, but when the Penal Code was passed, those provisions, which were originally incorporated in it, attracted the attention of that portion of the community which desired a freer Sunday, and the result was that the stringency of the former act was somewhat abated, and the Penal Code, while prohibiting all labor on Sunday, excepting works of necessity and charity, broadened the definition of work which was permitted by providing that in works of necessity and charity is included whatever is needful during the day for the good order, health or comfort of the community. (Penal Code, § 263.) Ordinarily one who is employed, whether upon a salary or upon wages, to work for another, is not expected to work on Sunday unless the nature of his employment is such as necessarily to require it. For instance, if one is hired for domestic service or for farm labor, that necessarily may include the doing of some things which have to be attended to on Sunday as well as on week days, such as ordinary domestic work, and the care of animals and things of that kind. But except where Sunday work is included in a particular employment by virtue of its very nature, the employee cannot be compelled to work on Sunday, and the refusal to work is not a sufficient ground for discharging him from his employment. (*Karner* v. *Smith*, 8 Conn. 14 ; *Berry* v. *Wallace*, Wright [Ohio], 657.) If an employed person sees fit to work on Sunday he cannot recover compensation for the services performed on that day. (*Palmer* v. *The Mayor, etc., of N. Y.*, 2 Sandf. 318 ; *Watts* v. *Van Ness*, 1 Hill, 76.) The plaintiff when he was employed took his employment subject to these rules. It may be that if he had refused to work on Sunday he would have been discharged from his employment, but although his employer had the power thus to punish his refusal to do what the law did not compel him to do,

nevertheless, the working on Sunday was not within his contract. It appears from the evidence in the case, however, that before the passage of the law of 1894, referred to, the men in the employ of the street cleaning department had been expected to work on Sunday whenever they were called upon to do so, and they did work a very considerable portion of those days during the year. The law is settled that for such work they were not entitled to additional compensation (*Palmer* v. *The Mayor, etc., of N. Y.*, 2 Sandf. 318), and so it appeared that these men, although they were not by statute compelled to work on Sunday, nevertheless were called upon to do so, and did do so, and were not at liberty to receive any compensation for it. This was the condition of the law at the time of the passage of the act of 1894. By that act, as has been already shown, in addition to a maximum rate of pay given to each man in the street cleaning department, the board of estimate and apportionment were at liberty to give extra pay for work on Sundays to some of the employees at least. The statute, after making that provision, continued as follows: " The members of the department of street cleaning shall be employed at all such times and during such hours and upon such duties as the commissioner of street cleaning shall direct, for the purpose of an effective performance of the work devolving upon said department." This provision of the statute clearly authorized the commissioner to call out the employees of the department for work on Sundays, if in his judgment it was necessary, as well as on any other days, which he had not by statute the authority to do before. This law, therefore, differed in two respects from the statute as it had existed before. In the first place it provided for extra pay on Sundays to somebody. In the second place it gave to the commissioner of street cleaning explicit authority to call the men out for work on that day if it was necessary to do so. The power to call out the force of the department for work applied to every man in it. Each one of them was at the disposal of the commissioner if he saw fit to require him to appear, and it necessarily follows that except for those whose duties were such that a portion of them had to be performed on Sunday, no man was compelled to come out for work unless he was called upon for that purpose. So the evidence shows. It appears from the testimony of the superintendent that

the men were called upon to work on Sunday as might be necessary, and unless they were called upon they were not expected to do so. This, however, did not apply to the stable foreman, the assistant stable foremen or the hostlers, because it appears from the testimony of the superintendent of the stables that these men were compelled to keep their horses and stock in shape, and were compelled to have the hostlers there to groom and feed and water the horses on Sunday, as might be expected. Sunday work being necessary for the hostlers by virtue of the nature of their employment, it would be fair to assume that their salaries would be fixed with reference to the fact that they were always expected to work on Sundays, and there would be no reason that they should have any extra pay for that sort of work, which they were always to do as a portion of the regular employment. And so of the assistant foremen of the stables; it was their duty to superintend the care of the horses, and it was just as important that they should be present on Sunday to see that the work was properly done, as it was that the hostlers should be present to do it, and so it might be assumed that their salary would be fixed with reference to the necessity that existed that a portion at least of their work should always have to be done on Sunday. But with reference to the other employees of the department, including the superintendent, it was entirely different. Whether they worked on Sunday or not, depended upon the order of the commissioner. If they were called out they were obliged to work, otherwise not. It was not easy, therefore, to fix their compensation in view of the work on Sunday, because they might or might not be called upon to do it, and if they were not called upon they would be overpaid, if pay for that work was allowed as part of their salaries. The only just way, therefore, was to do precisely what was done by the statute: provide that they might have extra pay if they were called upon to do work on Sundays, and this, in my judgment, is the plain meaning of that statute.

The defendant seeks to confine the words "and extra pay for work on Sundays" to the hostlers, because he says that in the nature of things the hostlers were expected to work on that day, and for that reason it was proper to give them extra pay. But it appears from the testimony of Wallace, who was superintendent of stables, that when he was a foreman at the stables he was expected to be on

duty on every Sunday, and there is no reason why the words "and extra pay for work on Sundays" should not apply to the stable foreman who was expected to do work on Sundays as well as to the hostlers. But the construction contended for by the respondent forbids such an allowance to be made, or an allowance to the stable foremen, but confines it solely to the hostlers, who were only a portion of those who were always called upon to do work on that day. This construction is sought to be defended by the punctuation. In the statute each official is mentioned, with the maximum salary to be allowed to him, and this is followed by a semi-colon, and that is the punctuation down to the words "of the assistant stable foremen, nine hundred dollars each." These words are followed by a semi-colon; then occur the words "of the hostlers, seven hundred and twenty dollars each," with a comma, and then the words "and extra pay for work on Sundays." Relying upon this punctuation, the defendant insists that the words "and extra pay for work on Sundays" can only be made to apply to the hostlers. But the punctuation of a statute is of very slight importance in its construction. This clearly appears from the well-known method of procedure while the statute is pending in the Legislature. It is introduced; ordered printed; referred to a committee; it is then printed; it is reported by the committee, with the amendments; it is then printed again and put upon its final passage, and after it has been passed it is engrossed with more or less accuracy, and the engrossed bill is the one which contains the authoritative words of the act. The duty of punctuation is not imposed upon anybody, and no satisfactory inference can be drawn as to the construction of the act from the fact that it contains this or that punctuation. The courts do not leave to punctuation much if any force, but rest the construction of a statute upon what appears to be the intent of the language taken as a whole, in view of the circumstances surrounding its passage, and the evil which it was intended to remedy. (Suth. Stat. Const. § 232; *Morrill* v. *The State*, 38 Wis. 428; *Hammock* v. *Loan & Trust Co.*, 105 U. S. 77.) Such a construction as the defendant contends for would give Sunday pay to the hostler only; and take away the power to give it to other employees who were at work in the stables. This construction should not be adopted unless it is required, and the mere fact that the law is punctuated in a

particular manner does not afford a sufficient reason for it. Upon a careful consideration of the statute there can be no question, as it seems to me, that it authorized the board of estimate and apportionment, in its discretion, to provide for extra pay for work on Sundays, for every man in the employ of the street cleaning department.

But it is said by the defendant that the board has not allowed such compensation, nor fixed the amount. This, as it seems to me, is clearly erroneous. The board took action under this statute on the 31st of July, 1894. It passed a resolution reciting the statute in *hæc verba* and then fixed the annual compensations and salaries at the amounts stated in the statute as quoted in the recital of the resolution. The effect of this depended of course upon the construction of the statute, and if, by fair construction, the statute provided that the board of estimate and apportionment might give extra pay for work on Sundays to each employee of the department, the resolution was clearly sufficient to do it. That it was done appears quite clear by the subsequent action of the board of estimate and apportionment. In 1893 the final estimate for the department of street cleaning said nothing about work on Sundays. In 1894 there was presented to the board of estimate and apportionment the statements of the necessary expenses of extra pay for Sunday work, and that, four days afterwards, was followed by a resolution of the board by which the final estimate of the amount to be apportioned to the department was fixed at $2,396,000, and that was followed by a statement that the above appropriation includes all necessary expenses for Sunday work. In view of the fact that the estimate of the commissioner had included an amount to be apportioned for extra pay for Sunday work, the fact that this final estimate states that the necessary amount for that purpose is included in it, is conclusive that it was intended to allow it pursuant to the provisions of the statute, and it raises a fair inference that it was intended to allow it to the persons to whom it was apportioned in the estimate of the commissioner of street cleaning. If an appropriation was made for extra pay for Sunday work it is a matter of no importance that the amount to be paid to each person who was called upon was not fixed. He had the right to have either what his work was actually worth or to be paid for Sundays at the same rate of daily pay that he received for other days. It appears in this case that the daily pay

of the plaintiff was $3.19, and there is testimony to the effect that
that was a reasonable compensation for his services.    In either case,
therefore, he would be warranted to recover that sum if he was
entitled to recover anything for the Sunday work.    By fair infer-
ence from the statute he was so entitled, and, therefore, it was error
to dismiss his complaint, and the judgment should be reversed and
a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and BARRETT, J., concurred; INGRAHAM and
MCLAUGHLIN, JJ., dissented.

INGRAHAM, J. (dissenting):

The plaintiff was a section foreman in the street cleaning depart-
ment of the city of New York; from the 26th day of April,
1894, to the 22d day of March, 1895, he worked a portion of
forty-seven Sundays, and sues to recover for the services per-
formed on such Sundays in addition to the salary paid to him by
the city.    He concedes that he has been paid his salary, but alleges
that by the provisions of the law under which he was appointed he
is entitled to extra pay for work done on Sundays.    The salaries of
employees of the street cleaning department were provided for by
section 1 of chapter 368 of the Laws of 1894.    It is there provided
that the annual salaries and compensation of the members of the
uniformed force of the department of street cleaning shall be
fixed by the board of estimate and apportionment and shall not
" exceed the following."    There then follows an enumeration of the
employees of the department and a sum of money is specified
following each position enumerated.    After the office of general
superintendent the amount specified is $3,000, and of the assistant
superintendent, $2,500; then an enumeration of the other officers
which includes that of the section foreman; the amount named after
specifying this office is $1,000.    Other employees of the depart-
ment are enumerated; and after specifying each officer a sum of
money is named.    The last employees named are the hostlers and
there follows, " seven hundred and twenty dollars each, and extra pay
for work on Sundays."    The section then continues: " The members
of the department of street cleaning shall be employed at all such
times and during such hours and upon such duties as the commis-
sioner of street cleaning shall direct for the purpose of an effective

performance of the work devolving upon said department." It will be noticed that this statute does not of itself fix the salaries and compensation of the employees of the department. It provides that such compensation shall be fixed by the board of estimate and apportionment, but shall not exceed the sums mentioned. Thus, the board of estimate and apportionment had the power to fix the salary of the officers and employees specified, at any sum not exceeding the limit fixed by the statute. Until that board acted, the compensation to be paid to these officers had not been fixed.

The plaintiff testified that he was appointed on the street cleaning force in 1889 and continued an assistant foreman until January, 1890; that at a later period he was designated a section foreman and continued as such until March 22, 1895. From 1890, when he was appointed, down to his discharge, he was paid at the rate of $1,000 per year for his services. He testified that he was required to work on Sundays; that he protested against doing so to the general superintendent and also to the district superintendent; that the superintendent of the department responded to his protest that if he did not work he would lose his position. It seems from his testimony that all of the uniformed force was required to do more or less work on Sundays as well as on week days. It was further proved that at a meeting of the board of estimate and apportionment, on July 31, 1894, a resolution was adopted which recited what purported to be section 1 of chapter 368 of the Laws of 1894, and then resolved that the annual salaries and compensation of members of the uniformed force of the department of street cleaning "shall be and are hereby fixed at the amounts stated in the statute as quoted in the foregoing preamble, to take effect from and after January twenty-sixth, the date of the passage of chapter 368 of the Laws of 1894." By this resolution there was no special action of the board of estimate and apportionment fixing as any part of the salary of the plaintiff any sum of money for extra work on Sundays. His salary was fixed at the amount stated in the statute. Now, the amount stated in the statute, as recited in the preamble as the salary of the section foremen, was $1,000 each; and that seems to me to be the amount which the board of estimate and apportionment fixed as the salary of such section foremen. Assuming that the board of estimate and apportionment had power to fix an amount which would

be payable to each of these officers recited in the preamble as extra pay for work on Sundays, it seems to me that to entitle them to such extra compensation some specific sum must be fixed by the board of estimate and apportionment for Sunday work for each employee. That the board did not do. They fixed the salaries of these employees at the amount stated in the statute as quoted in the the preamble. The amount stated in the statute as so quoted as the salary of the section foremen was $1,000 per year each, and as that was the amount of salary fixed by the board of estimate and apportionment that salary was all that the plaintiff was entitled to.

But I think it also clear that it was the meaning of the statute that the salary of the section foremen should not exceed $1,000 per year. The section in question fixed the compensation of all of the uniformed force of the department. After fixing an annual compensation for each officer there followed a semi-colon, thus separating each officer from those that preceded and those that followed; and at the end of this enumeration is the provision, " of the hostlers, seven hundred and twenty dollars each, and extra pay for work on Sundays." From this provision of the statute it would seem plain that the words " and extra pay for work on Sundays" applied only to the hostlers. The Legislature gave to the board of estimate and apportionment power to fix, in addition to the $720 per year to be paid to the hostlers, an additional compensation for Sunday work, but made no such provision for the other officers named. An officer taking this appointment under the statute would understand that his salary was not to exceed $1,000 per year and that it was to cover all services rendered to the city under his appointment whether on Sundays or week days. That he might be called upon to work on Sundays was apparent from the statute, and such work would not entitle him to receive any compensation in addition to that fixed by the board of estimate and apportionment. His salary for the work performed under the statute was fixed, and if he did not wish to perform the services required of him for the compensation fixed by law he was not compelled to remain in the employ of the department. Many other officers are required, by the nature of the services which they are appointed to perform, to work on Sunday, notably policemen and firemen; and it is clear that the salary paid to them includes the service that they perform on Sunday.

I think, therefore, that the salaries as contemplated by this statute were not to exceed the amount named, and that the provision that the board of estimate and apportionment could fix a sum as compensation for work on Sundays applied only to the hostlers; that the board of estimate and apportionment, in passing the resolution which they did, fixed the salary of the plaintiff at $1,000, the amount stated in the statute, and that he was not entitled to any greater compensation for his services to the city. There is nothing to show that by subsequent action the board allowed to the plaintiff any sum for extra Sunday work. It appears that on December 27, 1894, the commissioner of street cleaning presented to the board of estimate and apportionment an estimate of the necessary expenses for Sunday work which would include a payment to each of the officers named in this section of the statute, but there is no evidence that the board took any action on this report which would entitle plaintiff to any compensation in addition to the salary allowed him by the former resolution.

I think, therefore, that the plaintiff was not entitled to recover extra pay for Sunday work, and that the judgment appealed from should be affirmed, with costs.

McLAUGHLIN, J., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.