## MORRILL VS. THE STATE.

HAWKERS AND PEDDLERS. (1, 2, 4) *Ch.* 72 *of* 1870 *construed. Punctuation not important. Who liable to penalty. When goods not "manufactured within this state," in the sense of the statute.* (3, 5–8) CONSTITUTIONAL LAW. (3) "*Traveling for the purpose*" *of hawking, without license, may be prohibited.* (5) *The act an exercise of the police power.* (6) *Not affected by constitutional restraints on the taxing power.* (7) *Not void because onerous and unequal.* (8) *Not forbidden by the federal constitution.*

1. In construing a statute, the *punctuation* is entitled to small consideration.
2. Sec. 7, ch. 72, Laws of 1870, in connection with sec. 1, must be construed as providing for the infliction of a penalty upon every person who shall be found traveling "from place to place within this state for the purpose of carrying to sell or exposing to sale any goods," etc., without having obtained a license as hawker and peddler in the manner provided in the act.
3. It is as competent for the legislature to prohibit persons from *traveling for the purpose* of hawking and peddling without license, as to prohibit actual *sales* by hawkers and peddlers without license.
4. K. & N , residents of this state, are general agents of the Singer Manufacturing Company (a corporation of another state), for the sale in this state of sewing machines manufactured by that company; and

they received the machines from the company, in parts, at Milwau-
kee, and there fitted the parts together, and tested the machines, the
work requiring a shop, with machinery and tools, and the employ-
ment of several men; but such parts were not manufactured in this
state. *Held*, that the machines cannot be regarded as "manufac-
tured within this state," so as to come within the exception of sec.
14 of the act of 1870.

5. Laws restricting the business of hawkers and peddlers, or providing
for the licensing thereof, are an exercise of the *police power* of the
state, and do not lose this character by requiring payment of the li-
cense fees into the state treasury.

6. The act of 1870 being an exercise of the police power, that provision
of the state constitution which requires uniformity of taxation is in-
applicable to it. Whether, if it were an exercise of the taxing
power, it would violate the constitutional rule of uniformity by rea-
son of the exceptions created by sec. 14, is not here determined.

7. The legislature, under the police power, might *prohibit* entirely the
business of hawking and peddling; and the power to prohibit (where
the act or business is not *malum in se*) includes the power to license
on such terms as the legislature may deem fit, however onerous and
unequal in fact.

8. There is nothing in said act of 1870, considered as an exercise of the
police power of the state, which is in violation of the federal consti-
tution.

ERROR to the Circuit Court for *Dane* County.

The plaintiff in error was prosecuted and convicted in the
municipal court of Madison for a violation of ch. 72, Laws of
1870, concerning hawkers and peddlers. The charge in the
complaint is, that he traveled from place to place in Dane
county "for the purpose of carrying to sell and exposing to
sale certain goods, wares and merchandise, to wit, sewing ma-
chines, without having obtained a license as hawker and ped-
dler according to law, and the said sewing machines not being
the work or production or manufacture of the said *Morrill*,
manufactured or grown in this state in any manner, nor of any
resident of this state." No objection is taken to the form of
the complaint.

The plaintiff in error thereupon appealed to the circuit
court, in which court he was tried and again convicted; and,

Morrill vs. The State.

by writ of error, he removed the record and judgment of conviction into this court, for review.

Instructions which present all of the questions considered by this court, were proposed on behalf of the plaintiff in error, and refused by the circuit court.*

_Lewis & Tenney_ and _Cottrill & Cary_, for the plaintiff in error:

1. Can the legislature make it a penal offense to travel from place to place for the purpose of offering for sale goods, wares, and merchandise? 2. The statute does not provide a punishment

---

*Ch. 72, Laws of 1870, contains the following with other provisions:

"Sec. 1. No person shall be allowed to travel from place to place within this state for the purpose of carrying to sell or exposing to sale any goods, wares or merchandise, unless he shall have obtained a license as a hawker and peddler in the manner hereinafter provided.

"Sec. 4. No person shall be allowed to sell or expose for sale, any patent right, or territory for the sale, use or manufacture of patent rights or articles, unless he shall have obtained a license as a patent right dealer. * * *

"Sec. 5. Every owner, manager or agent of any caravan, circus or menagerie, before he shall be allowed to exhibit the same in this state, shall procure a state license as a public showman, in the manner hereinbefore provided for hawkers and peddlers, and shall pay into the state treasury therefor, the sum of one hundred dollars.

"Sec. 7. Every person who shall be found traveling and trading or selling or offering to sell any patent right or territory for the sale, use or manufacture of patent rights or articles within this state, contrary to the provisions of this chapter, or contrary to the terms of any license that may have been granted to him as a hawker and peddler, patent right dealer or public showman, shall for each offense be fined in a sum not exceeding fifty dollars, nor less than twenty dollars, and costs of prosecution, and in default of which payment, may be committed to the county jail for a period not exceeding three months.

"Sec. 14. Nothing contained in this chapter shall be so construed as to prevent any manufacturer, mechanic or nurseryman having a legal residence in this state, from selling his own work or production, manufactured or grown in this state in any manner, without license; nor shall any patent right dealer who is a citizen of this state, be required to take out a license to sell his own invention; nor shall any person traveling on foot, canvassing for or selling books, pamphlets, papers or maps, be required to take out the license in this chapter provided.'

for doing the acts alleged to have been done by the plaintiff in error. 3. The machines sold in this case were "manufactured within this state," within the meaning of sec. 14 of the statute. 4. The several parts of the act, taken together, provide as follows: (1) Citizens of this state may sell articles grown, produced or manufactured by them, without a license. (2) Persons who have not a legal residence in this state, i. e., who are not citizens thereof, although selling goods produced or manufactured within this state, must pay license. (3) Citizens of this state must pay a license if the goods sold by them are grown or manufactured, by themselves or others, out of the state. The law, therefore, (1) Discriminates in favor of citizens of this state against the citizens of other states, as to the right to sell without license. (2) Discriminates in favor of the resident producer and manufacturer against the productions and manufactures of citizens of other states. (3) Lays a tax, duty, or impost (to the extent of the license required) upon the productions and manufactures of other states, brought into this state for sale. (4) Is an attempt to regulate commerce between the states. The right to license is derived from the right to tax, and is but another method of exercising the taxing power of the state. A tax or license to sell goods is a tax upon the goods themselves. *McCulloch v. Maryland*, 4 Wheat., 431–2; *Brown v. Maryland*, 12 id., 446; *Minot v. R. R. Co.*, 2 Abb. (U. S.), 323; 7 Phila. R., 555; Cooley's Con. Lim., 201, 586–7. While states have the right to make and enforce police regulations, a license the chief purpose of which is to raise a revenue, cannot be regarded as a police regulation. 2 Abb. (U. S.), 323; 15 Pet., 511; 17 Wall., 560; Cooley's Con. Lim., *ubi supra*. The federal constitution (art. I, sec. 8, subd. 3) vests in congress the power "to regulate commerce with foreign nations, and among the several states;" and this power is exclusive. 14 Pet., 574; *Passenger Cases*, 7 How., 394; 12 Wheat., 446; *Gibbons v. Ogden*, 9 id., 1. Commerce between the states means intercourse and traffic between them by their respective citizens. 9 Wheat., 189–194.

It means an exchange of commodities. 7 How., 401–407; 15 Pet., 511. The power to regulate this commerce was vested in congress in order to secure equality and freedom in commercial intercourse, against discriminating state legislation. *R. R. Co. v. Richmond*, 19 Wall., 584. The taxing power of the state cannot interfere with any regulations of commerce. 12 Wheat., 449; *Almy v. California*, 24 How., 169. The states may tax all property within their limits, which has become mingled with the property of the state, *when such tax does not discriminate against such property as belonging to residents or citizens of other states, or as the production of other states.* *Osborn v. Mobile*, 16 Wall., 479; 10 Conn., 343–4. But a tax levied by a state, whether by the exaction of a license or otherwise, upon the transportation of goods into such state from another, or upon the sale of goods brought into such state from another, discriminating against them as the productions of such other state, or as belonging to citizens of another state, and taxing them at a higher rate than the productions of the state levying the tax, or than like property of its citizens, for the purpose of giving the productions or the citizens of such state an advantage over those of another state, is an interference with or regulation of commerce, forbidden by said sec. 8 of art. 1. 12 Wheat., 449; 2 Abb. (U. S.), 323; 7 Phila., 555; 5 How., 595; *Woodruff v. Parham*, 8 Wall., 123; *Hinson v. Lott*, id., 148; *Ward v. Maryland*, 12 id., 418; *The Delaware R. R. Tax*, 18 id., 206; *State Freight Tax*, 15 id., 232; *Tax on Railroad Gross Receipts*, id., 284. 2. Counsel also cited the following provisions of the federal constitution: (1) Art. I, sec. 10, subd. 2: "No state shall, without the consent of congress, lay any imposts or duties," etc. (2) Art. IV, sec. 2: "The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." 3. The federal constitution (art. I, sec. 8, subd. 8) empowers congress to grant to authors and inventors "the exclusive right to their respective writings and discoveries." This, of course, includes the right to sell, use and dispose of;

otherwise it would be useless.   The power to tax is a power to destroy.   4 Wheat., 431–2.   If a state can regulate or interfere with the power to sell or use a patent or patented article, it may tax it to such an extent as to prevent the sale or use within its limits.   *Helm v. First Nat. B'k*, 43 Ind., 167; 4 Wheat., 432.   When, however, a patented article has become mixed with the general mass of property, it may doubtless be taxed like other property, if no discrimination is made against it as such.   4. If sec. 14 be held void, the remainder of the statute cannot be regarded as valid; since this would clearly defeat the legislative intent in framing the law.   5. The license required by the statute being essentially a tax, its substantial object being to raise a revenue, it is a violation of the rule of uniformity in taxation established by art. VIII, sec. 1 of the state constitution.   *Att'y Gen. v. Plankroad Co.*, 11 Wis., 35.

*The Attorney General*, for the state.

LYON, J.   I. The learned counsel for the plaintiff in error have, without argument, submitted to our consideration the question whether it is competent for the legislature to make it a penal offense for any person to travel from place to place " for the purpose of carrying to sell, or exposing to sale, any goods, wares and merchandize," unless such person have a license as a hawker and peddler. . The point of this objection to the validity of the statute seems to be, that the actual sale of the articles is not expressly made an ingredient in the offense.

The statute was doubtless enacted in the interest of merchants having fixed places of trade, on the theory that a sound public policy demands that these should be encouraged, and traveling merchants or peddlers discouraged; and for the further purpose of protecting honest and well disposed citizens from the arts and importunities, and frequently from the dishonest practices, of a class of traders to whom they are usually strangers, and who are not as directly amenable to those legal and social restraints which must necessarily greatly influence

the business conduct of a merchant having a fixed place of business, and depending for his patronage upon one and the same community. These objects may be as well attained by merely prohibiting the traveling for the purpose of carrying the merchandise to sell, as by prohibiting the sale in terms. We think that if the act would be valid had it expressly prohibited *sales* by hawkers and peddlers without license, it is valid in its present form.

II. It is further claimed that the act of 1870 does not, in a case like this, make a violation of its provisions a penal offense. The position is, that sec. 7 relates only to patent-right dealers, and perhaps showmen, who are required by secs. 4 and 5 to obtain licenses, and not to those persons who are so required by sec. 1. The argument in support of this position seems to be based on the punctuation rather than the language of sec. 7. In giving construction to a statute the punctuation is entitled to small consideration, for that is more likely to be the work of the engrossing clerk or the printer, than of the legislature. The correct reading of so much of the section as is applicable to this case, is as follows : " Every person who shall be found traveling within this state contrary to the provisions of this chapter " (that is, traveling for the purposes specified in sec. 1), " shall for each offense be fined," etc. The obvious intention of the legislature, to be ascertained from the language employed, must control, and we do not doubt that by incorporating sec. 7 in the act, the legislature expressed an intention to render a person criminally liable who travels from place to place within this state for the purpose of carrying to sell or exposing to sale any merchandise, without a license and contrary to the provisions of the act.

III. It is also claimed on behalf of the plaintiff in error, that the case comes within one of the exceptions contained in sec. 14, and hence that he was not required to obtain a license. The facts upon which this claim is predicated are as follows : Kasson & Noyes, residents of this state, were the general

agents of the Singer Manufacturing Company (a corporation of another state), for the sale in this state of sewing machines manufactured by that company. One Clark was the agent of Kasson & Noyes, and the plaintiff in error, who was also a resident of this state, was the agent of Clark for the sale of such machines. The offense for which the plaintiff in error was convicted, was an act done in the course of such agency. Kasson & Noyes received the machines from the company, in parts, at Milwaukee, and there fitted the parts together and tested the machines. This work required a shop with machinery and tools, and the employment of several men. Such parts were all manufactured in other states.

From these facts we are unable to hold that the machines mentioned in the complaint were manufactured in this state.

IV. It is further argued that, in view of the exemptions granted by sec. 14, the act is a violation of that provision of our constitution which ordains that "the rule of taxation shall be uniform." Art. VIII, § 1. The attorney general contends that the act is not an exercise of the taxing power, but of the police power of the state. We are to determine which of these positions is correct.

The license fees required by the act of 1870, go into the state treasury and constitute a portion of the revenue of the state. In a certain sense, therefore, those fees are taxes, and the act requiring them to be paid an exercise of a power of taxation. Yet revenue may incidentally result from an undisputed exercise of the police power. Indeed, such is usually the result of police regulations, whether made directly by the legislature, or by a municipality acting under authority of law. But that fact does not divest the regulation of its police character and render it an exercise of the taxing power. Laws prohibiting the sale of liquor or the keeping of dogs, without license, are familiar illustrations of the exercise of police power. Such laws have been upheld by this court upon the express ground that they were not an exercise of the taxing, but of the

police power. *Carter v. Dow*, 16 Wis., 298; *Tenney v. Lenz*, id., 566; *State v. Ludington*, 33 id., 107. Of the same character is a law requiring certain insurance agents to pay a percentage of the premium received by them to the local fire department. *Fire Department of Milwaukee v. Helfenstein*, 16 Wis., 186. In *Tenney v. Lenz* it was expressly held that the fact that the license fees produced revenue, did not change the character of the law. It was still an exercise of the police power.

That the law of 1870 is an exercise by the legislature of police power is the more apparent when we consider the nature and extent of that power. Judge COOLEY, in his admirable treatise on constitutional limitations, says: " The police power of a state, in a comprehensive sense, embraces the system of internal regulation, by which it is sought not only to preserve the public order and to prevent offenses against the state, but also to establish for the intercourse of citizen with citizen those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and to secure to each the uninterrupted enjoyment of his own, so far as is reasonably consistent with a like enjoyment of rights by others." p. 572. And the same learned author quotes approvingly the language of Chief Justice SHAW in *Commonwealth v. Alger*, 7 Cush., 84, on the same subject: "Rights of property, like all other social and conventional rights, are subject to such reasonable limitations in their enjoyment as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law as the legislature, under the governing and controlling power vested in them by the constitution, may think necessary and expedient."

The reasons (or at least some of them) why the legislature enacted the law of 1870, have already been stated. That they are stated correctly, and that the common law regarded hawkers and peddlers with disfavor, and their vocation opposed in some degree to public policy, will appear by reference to

Jacobs' Law Dictionary. We there find the following: "HAWKERS. Those deceitful Fellows who went from Place to Place, buying and selling Brass, Pewter and other Goods and Merchandize, which ought to be uttered in open Market, were of old so called; and the appellation seems to grow from their uncertain Wandering, like Persons that with *Hawks* seize their Game where they can find it. They are mentioned Stat. 25, Henry 8, cap. 6, and 33 Hen. 8, cap. 4. *Hawkers* and *Pedlars*, etc., going from Town to Town or House to House, are now to pay a Fine and Duty to the King." The author then refers to 8 and 9 W. 3, cap. 25 (A. D. 1697), and several other statutes, which in principle are very similar to the act of 1870. Of course we do not intend to apply any epithet contained in the above extract to persons engaged in the business of hawkers and peddlers; for we know that very many honest and highly respectable people are so engaged at the present day. We give the language of the author merely to show the grounds upon which, centuries ago, parliament regulated and restricted the business, and that such regulation and restriction is an exercise of police power in the interest of the public. But with this disclaimer we must be permitted to add that, undoubtedly, resort is often had to this business for the sole purpose of obtaining admittance (which could not otherwise be obtained) into private dwelling houses in furtherance of some criminal or unlawful object. This is another reason why the restriction or regulation of the business is an exercise of police power.

Entertaining these views of the character of the law of 1870, it becomes unnecessary to decide whether, were the enactment of that law an exercise by the legislature of the power of taxation, it violates the rule of uniformity prescribed by the constitution.

But it may be said that the act discriminates unjustly against certain classes, and for that reason should not be sustained as a valid exercise of legislative power. Conceding that it does

so discriminate, that is a good reason why the act should be amended, but is not ground for holding it void. The decisions of this court in the cases above cited, on the nature and extent of the police power, go upon the principle that it is competent for the legislature, in the exercise of that power, to prohibit entirely the act or business licensed, and the power to prohibit (where the act or business is not *malum in se*) includes the power to license on such terms as the legislature may see fit to impose, no matter how onerous and unequal the terms may be. This subject is so fully discussed in those cases, particularly in the opinion by Chief Justice DIXON in *State v. Ludington*, that further discussion of it here is quite unnecessary. That the legislature has power to prohibit the carrying on of the business of ·hawkers and peddlers, we do not doubt.

V. Thus far we have considered the case without any direct reference to the effect of any provision of the federal constitution upon the act of 1870. The counsel for the plaintiff in error, with great ingenuity of argument, maintain that the act violates the following clauses of that instrument:   Art. I, sec. 8.   The congress shall have power:   *   *   *   3. To regulate commerce with foreign nations, and among the several states, and with the Indian tribes:   *   *   *   8. To promote the progress of science and useful arts, by securing for limited times, to authors and inventors, the exclusive right to their respective writings and discoveries.   *   *   * Sec. 9, subd. 5.   No tax or duty shall be laid on articles exported from any state.   *   *   *   Sec. 10, subd. 2. No state shall, without the consent of congress, lay any imposts or duties on imports or exports, except, etc.   *   *   *   Art. IV, sec. 2, subd. 1.   The citizens of each state shall be entitled to all ·privileges and immunities of citizens in the several states.

The bearing of these clauses of the federal constitution upon the act of 1870 will not be discussed in detail or at any considerable length, and a review of the numerous cases cited in the argument will not be attempted. The act being a mere

police regulation, those clauses of the constitution relating to taxes and imposts have no application to the case. Neither does the clause relating to inter-state commerce; for the act is not a regulation of commerce. · It restricts hawkers and peddlers, but does not interfere with the regular and usual course of trade and business. The Singer manufacturing company may sell its wares in this state at fixed places of business, without charge or obstruction, just as resident merchants may sell their wares. But if that company, or any citizen of another state, or any resident of this state, desires to hawk wares from place to place, it or he must submit to the terms which the legislature see fit to impose upon persons doing business in that manner. And whatever those terms may be, they cannot affect the " privileges and immunities " of any one, because they do not affect any right which pertains to citizenship. *Conner v. Elliot*, 18 How., 593.

We cannot concede for a moment that by ratifying the federal constitution the states ever intended to surrender to the federal government their control of matters so purely internal and municipal as the prohibiting or licensing of the sale of liquor, the keeping of dogs, the business of hawkers and peddlers, and the like; and although all of the states have legislated freely on these and kindred subjects, ever since the federal constitution had an existence, so far as we are advised, neither the federal nor state courts have yet asserted the exclusive control of the general government over such matters. On the other hand the authority of the state legislatures to enact laws of the character above indicated has been often asserted in the federal as well as in the state courts. So much of state sovereignty seems to have been left intact and unassailed. The recorded decisions of this court, and all of its traditions, forbid that we should be the first to assail it.

Upon the whole case we conclude that the act of 1870 is a valid enactment, and hence, that the judgment of the circuit court should be affirmed.

*By the Court.* — Judgment affirmed.