The State, Respondent, vs. Whitcom, Appellant.

*April 21—May 10, 1904.*

*Licenses to veddlers: Tax law or police regulation? Constitutional law: Equal protection: Exemptions.*

1. Sec. 1570, Stats. 1898, as amended by ch. 341, Laws of 1901 (requiring peddlers to obtain state licenses), cannot be sustained either as a tax law or as a police regulation. The exemption from its provisions of manufacturers, mechanics, nurserymen, and farmers who have owned the goods they hawk for three months or who actually manufactured or raised the products sold, of dealers in agricultural implements maintaining permanent places of business, of keepers of retail meat markets, of fish dealers, of sellers of fruit or vegetables in cities of the first class, and of persons selling at wholesale or to dealers only, and the discrimination in favor of blind, deaf and dumb, cripples, and partially disabled veterans of the war of the Rebellion, are not based upon any legitimate classification germane to the purpose of the law in either aspect, and persons not so exempted are therefore denied the equal protection of the laws guaranteed both by the federal and the state constitutions.

[2. Whether the act is an attempted exercise of the power of taxation or merely of the police power, not decided.]

State v. Whitcom, 122 Wis. 110.

[3. Whether sec. 1, art. VIII, Const. (providing that the rule of taxation shall be uniform, and taxes shall be levied upon such property as the legislature shall prescribe) limits the legislature to property as the basis for the levy of all taxes, not decided.]

[4. Whether in a purely police regulation of peddlers a legitimate distinction might be drawn between persons selling only to dealers and those selling at retail, not decided.]

5. In a tax law, exemption of persons partially disqualified from means of livelihood can be justified, if at all, only upon the assumption that they, as a class, are distinct from the rest of the community either as paupers or as potential paupers.

6. Neither in tax laws nor in police regulations can the fact of prior completed military service be made the basis of discrimination between citizens.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

Appeal from judgment against the defendant for a penalty of $100 and costs under sec. 1576, Stats. 1898, as amended by ch. 341, Laws of 1901, rendered by the trial court on agreed facts. Appellant was salesman for a foreign corporation authorized to do business in Wisconsin and maintaining a permanent store at Milwaukee, where it keeps for sale merchandise, including teas. Defendant, a resident of Wisconsin, traveled from house to house in Madison with a single horse and wagon, taking orders for teas, coffees, etc., by means of samples carried by him, the orders being filled at the store, and the parcels delivered by defendant upon his next trip, such parcels being made up for each individual purchaser, no goods being delivered by him at the time of taking the orders. He did this without any license under sec. 1570, Stats. 1898, as amended by the act aforesaid.

For the appellant there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Charles Quarles,* of counsel, and oral argument by *Charles Quarles.* They argued, among other things, that the statute is in violation of the fourteenth amendment of the federal constitution, in that it denies to certain persons the rights accorded to others. *Missouri v. Lewis,* 101

U. S. 22, 31; *Barbier v. Connolly,* 113 U. S. 27, 31; *Black v. State,* 113 Wis. 205, 218, 219; *Hayes v. Missouri,* 120 U. S. 68; *Connolly v. Union S. P. Co.* 184 U. S. 545, 549; *Gulf, C. & S. F. R. Co. v. Ellis,* 165 U. S. 150; *State ex rel. Sanderson v. Mann,* 76 Wis. 469; *State v. Shedroi,* 75 Vt. 277, 54 Atl. 1081; *Magoun v. Illinois T. & S. Bank,* 170 U. S. 283; *State ex rel. Luria v. Wagener,* 69 Minn. 206; *Ex parte Jones,* 38 Tex. Crim. 482, 43 S. W. 513; *State v. Hoyt,* 71 Vt. 59; *Ex parte Overstreet,* 39 Tex. Crim. 474, 46 S. W. 825; *Peoria v. Gugenheim,* 61 Ill. App. 374; *Comm. v. Snyder,* 182 Pa. St. 630; *Morgan v. Orange,* 50 N. J. Law, 389; *State ex rel. Garrabad v. Dering,* 84 Wis. 585; *State ex rel. Winkler v. Benzenberg,* 101 Wis. 172; *State v. Garbroski,* 111 Iowa, 496, 56 L. R. A. 570. The statute is also in violation of the first paragraph of the declaration of rights in the Wisconsin constitution. *Janesville v. Carpenter,* 77 Wis. 288; *Anderton v. Milwaukee,* 82 Wis. 279; *Black v. State,* 113 Wis. 205; *Ritchie v. People,* 155 Ill. 98; *Low v. Rees P. Co.* 41 Neb. 127; *State v. Haun,* 61 Kan. 146; *Braceville Coal Co. v. People,* 147 Ill. 66; *In re Morgan,* 26 Colo. 415; *State v. Goodwill,* 33 W. Va. 179; *Luman v. Hitchens,* 90 Md. 14; *Johnson v. Goodyear M. Co.* 127 Cal. 4; *Dixon v. Poe,* 158 Ind. 54, 60 L. R. A. 308; *Tacoma v. Krech,* 15 Wash. 296; *Denver v. Bach,* 26 Colo. 530, 46 L. R. A. 848; *People v. Warden,* 157 N. Y. 116; *Chicago v. Netcher,* 183 Ill. 104; *State ex rel. Wyatt v. Ashbrook,* 154 Mo. 375; *State ex rel. Zillmer v. Kreutzberg,* 114 Wis. 530, 539. This statute is not an exercise of the police power. *Republic I. & S. Co. v. State,* 162 Ind. 517, 62 L. R. A. 136, 142; *Niagara v. Cornell,* 110 Fed. 816; *Mugler v. Kansas,* 123 U. S. 623, 661; *State ex rel. Zillmer v. Kreutzberg,* 114 Wis. 539. It is mandatory upon the secretary of state to grant the license upon the payment of the fee; there can be no selection of applicants and no rejection of the unworthy; and there is no pretense of or provision for

supervision, regulation, or control. *Brennan v. Titusville,* 123 U. S. 289, 302; 1 Cooley, Taxation, 502; *Black v. State,* 113 Wis. 218; *License Tax Cases,* 5 Wall. 472; *State ex rel. Sanderson v. Mann,* 76 Wis. 475; *Rex v. M'Knight,* 10 Bar. & Cr. 734; *Stamford v. Fisher,* 140 N. Y. 187; *Spencer v. Whiting,* 68 Iowa, 678; *Comm. v. Farnum,* 114 Mass. 267; *Emmons v. Lewistown,* 132 Ill. 380; *State v. Moorehead,* 42 S. C. 211, 26 L. R. A. 585; *Stale ex rel. Wyatt v. Ashbrook,* 154 Mo. 375, 48 L. R. A. 268. The statute imposes a tax which is not levied upon property nor upon uniform rule. 1 Cooley, Taxation, 596; Cooley, Const. Lim. (6th ed.) 243, note 1, 609, note; *State v. Wheelock,* 95 Iowa, 577, 30 L. R. A. 429, 430; *Postal Tel. Co. v. Taylor,* 192 U. S. 64, 24 Sup. Ct. 208; *State v. Finch,* 78 Minn. 118, 46 L. R. A. 437; *State ex rel. Toi v. French,* 17 Mont. 54, 30 L. R. A. 415, 423, 426; *State v. Garbroski,* 111 Iowa, 496.

For the respondent the cause was submitted on the brief of the *Attorney General.* He contended, *inter alia,* that the exceptions to the statute are based on reasonable grounds of distinction. *Seabolt v. Northumberland Co.* 187 Pa. St. 318; *Rosenbloom v. State* (Neb.) 57 L. R. A. 922; *State v. Montgomery,* 92 Me. 433; *American S. R. Co. v. Louisiana,* 179 U. S. 89; *Pacific Exp. Co. v. Seibert,* 142 U. S. 339; *Giozza v. Tiernan,* 148 U. S. 657; *Columbus S. R. Co. v. Wright,* 151 U. S. 470; *Duncan v. Missouri,* 152 U. S. 377; *Magoun v. Illinois T. & S. Bank,* 170 U. S. 283; *Clark v. Kansas City,* 176 U. S. 114; *Gundling v. Chicago,* 177 U. S. 183; *Petit v. Minnesota,* 177 U. S. 164; *Williams v. Fears,* 179 U. S. 270; *Comm. v. Gardner,* 133 Pa. St. 284, 7 L. R. A. 666. Discrimination between merchants having a fixed place of business and those traveling from place to place, remaining in one locality only a few days, is not invalid. *In re Haskell,* 112 Cal. 412, 32 L. R. A. 527; *Carrollton v. Bazzette,* 159 Ill. 284, 31 L. R. A. 522; *Ex parte Heylman,* 92 Cal. 492; *Ex parte Felchlin,* 96 Cal. 360. An ordinance re-

quiring persons canvassing for books or other articles to take
out a license is not invalid because it excepts from its pro-
visions residents of the county selling their own farm pro-
ducts.   *Warren v. Geer,* 117 Pa. St. 207.   If the act in ques-
tion is an exercise of the police power of the state, then the
fourteenth amendment to the constitution of the United States
is not violated, as that amendment does not control the legis-
lature of the state in the enactment of laws under the police
power.   *Barbier v. Connolly,* 113 U. S. 27.

· DODGE, J.   Our statute relating to the licensing and pun-
ishing of peddlers and transient merchants (secs. 1570
*et seq.,* Stats. 1898, as amended by ch. 341, Laws of 1901)
is an edifice of composite architecture, made up of a series
of portholed turrets for offense against the obnoxious, and
sheltered corridors to shield the favorites of the successive
legislatures which have contributed to the conglomerate now
under consideration.   So far as any generalization of its laby-
rinthine details is possible, it provides that "no person" shall
be allowed to peddle—"peddling" being defined so as to in-
clude the dealings of the appellant here—without first ob-
taining a license from the state at a cost varying according as
the applicant travels by his own personal motive power or
with the aid of one horse or more than one horse.   Having
denounced penalty upon any person who does the prohibited
things, shelters have been provided for selected classes of per-
sons, as follows: Any mechanic, nurseryman, or farmer sell-
ing his ware or production by himself or employee, provided
that the manufacturer or mechanic shall have actually man-
ufactured and the nurseryman or farmer shall have actually
raised the products sold, "or shall have owned and been in
possession of the same for not less than three months next
prior to the sale;" any patent-right dealer selling his own in-
vention; any person selling at wholesale or to dealers; any
fish peddler selling fish; trainboys selling on railroad trains;

any person selling fruits or vegetables in cities of the first class; any blind, deaf, dumb, or crippled person, up to the limit of going on foot or with one horse or bicycle; any keeper of a meat market or dealer in agricultural machinery who keeps a permanent place of business; any person selling goods which are without the state at the time, and are to be shipped direct to the person ordering or purchasing such articles. Finally, it takes out of the favored peddlers of their own articles of manufacture or patent all traveling venders of extracts, salves, medicines, and drug compounds. By sec. 1575, as so amended, a further exemption is made to any honorably discharged veteran of the war of the Rebellion, either in the line or quartermaster's or commissary's department, who was disabled from hard manual labor in such service, and any one blind, deaf and dumb, or so crippled as to be incapable of hard manual labor; such applicants, however, to submit, in the discretion of the secretary of state, to $2 worth of examination to establish their crippled state, for which they must pay. The act requires the secretary of state absolutely to issue a license upon payment of the prescribed fee, with no provision whatever for inquiring into the character or fitness of the applicant, of whom it requires no bond securing obedience to other laws regulating his conduct, and no provision whatever is made for the supervision of his conduct or termination of the license by reason of any misconduct or breach of law.

The appellant assails this statute as discriminatory, as denying to him the equal protection of the laws guaranteed by the fourteenth amendment of the constitution of the United States and by sec. 1, art. I, of the constitution of Wisconsin; also for that it is obviously a measure of taxation, and therefore void, both because not laid upon property and not according to any uniform rule, as is thought to be required by sec. 1, art. VIII, of the Wisconsin constitution.

Several questions of the very gravest importance present

themselves in connection with the consideration of this law: first, whether it is an attempted exercise of the power of taxation, or merely of the police power; secondly, if the former, is it within the constitutional power of our legislature to levy taxes upon occupations, as distinguished from property? thirdly, if so, is the rule of uniformity infringed by the classification contained in the statute? and, fourthly, if merely an exercise of the police power of the state is the classification therein contained germane and legitimate to the subject, or arbitrary and artificial, so as to be an unconstitutional discrimination against certain classes of people?

Upon the first and second of these questions we have received very little aid from the briefs upon either side, further than directing our attention to *Morrill v. State,* 38 Wis. 428, where a similar act is described as an exercise of the police power. That case presents a rather inadequate consideration of a very important question, and almost entire omission to consider those distinguishing elements which mark a given legislative enactment as taxation or police regulation, especially in a field where either may be proper. It is difficult, however, to escape the conclusion that the reversal of this case (*Morrill v. Wisconsin,* 14 Sup. Ct. 1206, 23 L. Ed. 1009) on authority of *Welton v. Missouri,* 91 U. S. 275, 23 L. Ed. 347, involved the overruling of the view that only police regulation was involved. See *Van Buren v. Downing,* 41 Wis. 122. The *Welton Case* proceeds entirely on the view that the license fee was a tax; and the right of the state to merely reasonably regulate under the police power the conduct of all persons within its jurisdiction, whether engaged in interstate commerce or not, which has always been recognized by the federal courts, is not questioned. *Mugler v. Kansas,* 123 U. S. 623, 8 Sup. Ct. 273; *Kidd v. Pearson,* 128 U. S. 1, 9, 9 Sup. Ct. 6; *Patapsco G. Co. v. North Carolina,* 171 U. S. 345, 18 Sup. Ct. 862; *Comm. v. Dunham,* 191 Pa. St. 73, 43 Atl. 84. Those features which, according to

the text-writers, serve to mark a measure as police regulation (2 Tiedeman, St. & Fed. Control, § 218, p. 1026), seem persistently absent, and the very exception in favor of peddlers of goods which are outside of the state strongly indicates the idea of the legislature itself that it was not merely regulating the conduct of the person within this state, but imposing a tax upon his occupation, which, if his transactions involved interstate commerce, might conflict with the granted powers of the United States. There is therefore at least plausibility in appellant's contention that we are dealing with an effort of the legislature to exert its taxing power.

On the broader, and perhaps more important, question whether, if taxation, it is forbidden by our constitution, no examination seems to have been made by the attorney general, although it is one as yet not authoritatively decided. The constitution (sec. 1, art. VIII) simply provides that the rule of taxation shall be uniform, and taxes shall be levied upon such property as the legislature shall prescribe. This, it has been earnestly contended, limited the legislature to property as the basis for the levy of all taxes, and this view seems favored by the language of this court in *Wis. Cent. R. Co. v. Taylor Co.* 52, Wis. 37, 8 N. W. 833, where the history of the provision is reviewed, as also the various decisions leading finally to justification of the method of taxation of railroads there considered, supporting it as a mode of levying taxes upon the property of those corporations. On the other hand, in *Black v. State,* 113 Wis. 205, 89 N. W. 522, it is intimated that the naturally inherent power of taxation included in the general legislative power conferred by our constitution *prima facie* would include taxing occupations and privileges, and that such taxes are not so entirely inconsistent with the wording of sec. 1, art. VIII, but that the power to levy them may exist notwithstanding that section; but the question is expressly left undecided, in deference to the declaration of its uncertainty made in *Wis. Cent. R. Co. v. Tay-*

*lor Co.* In many states having generally similar constitutional provisions it has been held that they were not prohibitive, but only required uniformity in the rule of any form of taxation adopted by the legislature, while the latter clause merely vested the legislature with power of selection of the property upon which *property* taxes were to be levied. *In re Lipschitz* (N. D.) 95 N. W. 157. We cannot believe that a question so fraught with the gravest consequences ought to be decided by this court without a most thorough examination and argument by counsel, spurred to activity by the interest of their clients. Especially should we not attempt to settle the power of the state of Wisconsin in its legislative branch until the state has had opportunity for the fullest investigation and presentation of the arguments for or against either conclusion. If, therefore, it be possible to adjudicate the private rights involved in this litigation without attempting a decision upon the exact limits of the taxing power of our legislature, we shall deem it our duty to refrain from the latter.

If the law in its details can be sustained either as a tax law or a police regulation, we shall then have to consider whether it can be ascribed to that branch of legislative power. If it cannot be sustained under either phase, such location of it will be found unnecessary.

The constitutional limitation upon the taxing power is that its exercise must be according to a uniform rule. Sec. 1, art. VIII, Const. Wis. On the police power and the taxing power alike rests the limitation that its exercise shall affect all persons equally. Sec. 1, art. I, Const. Wis.; sec. 1, Amendm. XIV, Const. U. S.; *State ex rel. Kellogg v. Currens,* 111 Wis. 431, 434, 87 N. W. 561. The uniformity and the equality thus enjoined are construed only with such meaning as to enable practical government. Such command does not require that all property or all persons shall be treated exactly alike, but permits separation of either into classes of property or of persons similarly conditioned or situated, hav-

ing characteristics legitimately distinguishing the members of one class from those of another in respects germane to some general and public purpose and object of the particular legislation. *Wis. Cent. R. Co. v. Taylor Co.* 52 Wis. 37, 8 N. W. 833; *State ex rel. Kellogg v. Currens, supra; Black v. State,* 113 Wis. 205, 89 N. W. 522; *State ex rel. Zillmer v. Kreutzberg,* 114 Wis. 530, 549, 90 N. W. 1098; *Huber v. Merkel,* 117 Wis. 355, 366, 94 N. W. 354; *Lawton v. Steele,* 152 U. S. 133, 14 Sup. Ct. 499; *Republic I. & S. Co. v. State,* 160 Ind. 379, 66 N. E. 1005. Two of the essentials to the validity of this statute then are that there shall be at least a possible purpose or object to protect the public generally, and that the characteristics distinguishing the classes included shall have some reasonable relation to that purpose.

The purpose to raise revenue is, of course, general and public. The purpose to protect the public against irresponsible and deceitful traders, supposed to be proportionately more numerous among hawkers and peddlers, has been held sufficient to support the regulation of that class differently from other merchants. *Morrill v. State,* 38 Wis. 428. When, however, we come to division of the community into classes, some to be affected by the law and some not, the legitimacy of that classification may vary with the purpose. Some classes of property or some persons may be distinguished from the rest by characteristics very relevant and material to their fitness to carry on trade without special police regulation, but in no way germane to the propriety of their contributing to public revenues or being exempted therefrom. In the light of these general rules as to the limits upon the power of the legislature to classify, let us examine some of the attempts to exercise that power in the act of 1901.

Among the most glaring of the classifications is the separation of manufacturers, mechanics, nurserymen, and farmers who have owned the goods they hawk for a term of three months from all the rest of the community. We have spurred

imagination in vain for a reason germane either to a purpose of taxation or of police regulation which could have induced this segregation. Apparently counsel for respondent has been no more successful. Is the purpose taxation, why should the mechanic or the manufacturer as such be exempt? Certainly not because he contributes otherwise, for that is not made essential. The favored one is not required to reside or carry on any business within this state, save as he may send here his employee to sell exactly the same goods that his neighbor who happens to be a merchant, a lawyer, or a physician, would be excluded from selling, although he, too, had owned them for three months. Again, what possible reason, revenue or police, can justify discrimination between the farmer or mechanic whose goods were purchased three months earlier and one who would offer to the community newly purchased goods of the same kind? Is one more honest than the other? If so, which? Is one more of an expense to protect against? Is either any more certain than the other to have otherwise contributed to the public revenues, or better able to contribute? These questions admit of none but negative answers. Counsel suggests that farmers and nurserymen do not usually live in cities where their customers are close at hand, but mechanics and manufacturers do as much as merchants. The further discrimination permitting the manufacturer, mechanic, or nurseryman to sell his own products is hardly less false. Is the wooden nutmeg any less meretricious because the man who brings it here and peddles it is hired by the Connecticut mechanic of whose lathe it is the fruit than if the same man were employed by that mechanic's next-door neighbor, a merchant? *State ex rel. Luria v. Wagener,* 69 Minn. 206, 72 N. W. 67; *McRoberts v. Sullivan,* 67 Ill. App. 435. Clearly, such classification as this cannot have sprung from any general public purpose, nor be germane to any. It is not equal protection of the laws to all people similarly situated with reference to that law.

State v. Whitcom, 122 Wis. 110.

We do not decide whether some carefully guarded exception in favor of the sale of their own products by those peculiarly certain to have contributed adequately to public revenues, or so situated as to be peculiarly and permanently within reach of local administration of justice, might under a tax law in the one case or a police regulation in the other be in some degree exempted from its application, for the present statute presents no such question.

Other glaring false classification is presented by the exemption of dealers in agricultural implements maintaining permanent places of business, or keepers of retail meat markets, or fish dealers, and sellers of fruits or vegetables in cities of the first class, selling their respective wares. What consideration of public welfare could exclude a retail grocer from peddling his wares, while permitting the keeper of an adjoining meat market to peddle perhaps the same articles, or exempt the dealer in plows from the restriction placed on the dealer in paints, fence wire, or any other merchandise, we confess our inability to discover. Under this act the agent of this appellant's employer and an agent of the keeper of a nearby meat market may start together on the same vehicle, each with his samples—tea, coffee, sugar in one satchel, ham, bacon, cured meats, and lard in the other; may visit the same farmer in the same vehicle, one take an order for coffee and sugar, the other for lard and bacon. The first is a criminal, the other not. The illustration leaves nothing to be said. It is discrimination between individuals of the same class, not between legitimate classes.

The discrimination in favor of persons selling only at wholesale or only to dealers is clearly a false one if this is a tax measure. No conceivable reason exists why a person peddling goods, who confines himself to one kind of customers, should not contribute to the revenues as much as another man selling to other kinds of customers. The distinction is not based upon any characteristic of the person taxed,

ability to pay taxes, or other distinction having any possible relation to the subject of raising revenue. Whether, if the measure is merely police, and were an attempt to regulate peddlers for the purpose of protecting the general public against irresponsibility and chicane, there might be a legitimate distinction drawn on the theory that dealers are less subject to such deceits, and hence that one selling only to them does not need to be so carefully watched by the government, is a question hardly at all debated in the briefs, and which we shall not feel called upon to decide at this time. See *Peoria v. Gugenheim,* 61 Ill. App. 374.

Another discrimination in favor of the blind, deaf and dumb, cripples, and partially disabled veterans of the war of the Rebellion, is surely false if this is a police measure. If deceit and swindling is to be feared in disproportionate degree from peripatetic traders, and is less easy of punishment, all such reasons apply with equal force to the members of this exempted class as fully as to the rest of the community. The falsity of the discrimination would, of course, be obvious in a law which undertook to punish acts of fraud and deceit in peddling, and how can it be any more legitimate in a law which is intended to prevent such deceits? Certainly no considerations of gratitude due from the community to the veteran soldier could be recognized for a moment as authorizing the legislature to exempt him, as a so-called class, from a law imposing punishment for theft or other crime, for the distinguishing circumstance would have no relation to the purpose of the law, which is to protect the public against the commission of such offenses. To accomplish that end, it is just as essential that the war-worn veteran, when he steals, be punished, as any other member of the community. If, on the other hand, this be a tax measure, an exemption of people partially disqualified from means of livelihood could be justified, if at all, only upon the assumption that they, as a class, are distinct from the rest of the community as either actual

or potential paupers, so that it might be the part of wisdom in the legislature to exempt them from burdens upon possible forms of industry, to the end that the very moneys which would otherwise be exacted from them, with perhaps considerable additions, might not at once have to be paid out of the same treasury for their support. The principle that special provisions in aid of veteran soldiers can only be supported if they involve the element of pauperism has already been decided by this court in *Juneau Co. v. Wood Co.* 109 Wis. 330,. 334, 85 N. W. 387. Inasmuch, however, as the present statute contains nothing to indicate that this exemption is intended for those who, by reason of indigence, are likely to become public charges, but may as well apply to those whose physical and financial conditions exclude any probability of pauperism, we find it unnecessary to decide whether a carefully guarded exemption of a class distinguished by actual or potential pauperism might be permitted in a tax law. In considering the exemption of partially disabled veterans of the Civil War, a quite unanswerable query arises why, whether for purposes of taxation or police, they should be exempt any more than equally disabled veterans of other wars; why a victim of Spanish bullets in 1898, or of a Philippine wound in 1900, is any more dangerous as a peddler, or less liable to become a public charge, than a similar victim of Confederate assault in 1864; or why the former is any less entitled to the gratitude and favor of the public, if that consideration were at all germane to either purpose of this law. Upon the general subject of classification of those who have served their country in arms, there has been much of decision in later years, growing out of the wholly unreasoning attitude of some legislatures toward them. No one denies that to those who have thus sacrificed their comfort, and often their health and vigor, to the public, there is a legitimate and proper feeling of gratitude from the entire community, which each member thereof should appreciate; but:

this does not answer the question whether, by constitutions enacted half a century or more ago, there was conferred upon agents of the public—the legislature—authority to coin this gratitude into all forms of favor, whether by direct donation or by exemption from the duties and burdens resting upon other citizens, after these men had returned from their military service and again become, as they were before, part of the mass of citizenship. The federal government does, without question, discriminate by direct payment of money by way of pensions. To that end, doubtless, those who served the government in its wars are a legitimate class distinct from the rest of the community by reason of the service which they have rendered; but in many other respects they are not so distinct, and that fact has been emphasized by the various states in many decisions. For the purpose of performing work for a government the ex-soldier stands upon no different footing from the civilian. *In re Keymer,* 148 N. Y. 219, 42 N. E. 667; *Brown v. Russell,* 166 Mass. 14, 43 N. E. 1005. And the same thing has been decided with reference to the application to them of a law licensing peddlers in *State v. Garbroski,* 111 Iowa, 496, 82 N. W. 959; *State v. Shedroi,* 75 Vt. 277, 54 Atl. 1081; *Ex parte Jones,* 38 Tex. Cr. 482, 43 S. W. 513; *Comm. v. Snyder,* 182 Pa. St. 630, 38 Atl. 356. The reasoning of these cases seems unanswerable, and we are convinced that in the application of a law either imposing a tax or police regulations the fact of prior completed military service does not serve to separate such persons from the rest of the community in any respect having relation to the purposes of the law.

It seems neither necessary nor wise to carry further critical analysis of this statute. We have pointed out several respects in which it fails to impose its penalties upon persons not distinguishable from the appellant by any legitimate classification. It therefore denies him the equal protection to which both by federal and state constitution he is entitled, and can-

not be valid as against him whether its purpose be taxation. or regulation of conduct. It is not for the court to make classification, nor to catalogue in advance such details of legislation as are permitted by the constitution. We have attempted to reiterate the general principles controlling the conduct of the legislature, and with that our duty ends.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.