SERVONITZ, Plaintiff in error, vs. THE STATE, Defendant in error.

*October 1—October 15, 1907.*

Habeas corpus: *Office of writ: Judicial error: Jurisdictional error: Unconstitutional criminal laws: Void judgment: Legislative regulation of procedure in* habeas corpus: *Statutes: Constitutional law: Equal protection: Class legislation: Subclassification: Hawkers and peddlers: Licenses.*

1. A writ of *habeas corpus* only reaches jurisdictional error; it cannot properly be made to perform the office of a writ of error.

2. By the common law if the court in any given case has authority under any circumstances to render judgment imprisoning the accused, the error in reaching the one pronounced is judicial, remediable by writ of error; if the court has no such authority the error is jurisdictional, remediable by writ of *habeas corpus.*

3. In case a judgment in any criminal action is grounded on an unconstitutional law it has no legitimate basis and is void; hence a person imprisoned thereunder may obtain his release by writ of *habeas corpus.*

4. So far as *habeas corpus* proceedings are proper in some circumstances to remedy mere excess of jurisdiction not falling within

the strict common-law rule above stated, they are referable to statutes.

5. The legislature may reasonably regulate procedure in respect to *habeas corpus*, but cannot restrict the common-law use of the remedy; that is preserved by the constitution.

6. Secs. 3408, 3427, Stats. (1898), providing that no person shall be entitled to prosecute a writ of *habeas corpus* who shall have been committed or detained by virtue of the final judgment or order of any competent tribunal, and that the court must make an order remanding the prisoner upon its appearing that he is detained by virtue of the final judgment of a competent court, are in harmony with the constitution. Within the meaning of the statute, a court has no jurisdiction, and so is not competent, by its judgment to give force to an unconstitutional law.

7. Under the rule that "the writ of *habeas corpus* does not reach beyond the commitment when the person is detained by virtue of a final order or judgment of a court having jurisdiction of the subject matter and the person," no such jurisdiction can be obtained to enforce an unconstitutional law.

8. The legislature may treat the occupation of hawker or peddler by itself, as regards exactions for police regulations and occupation taxes.

9. Under the rule as to classification for the purposes of legislation, special as to the class but general as to the members thereof, there may be a broad general class and subclassification. The subclassification of hawkers or peddlers according to the particular method adopted of reaching customers, rendering one class likely to reach more than another and to do a correspondingly greater amount of business both as to number of transactions and the amount of money involved, is legitimate, both as to police regulations and occupation taxes.

[Syllabus by MARSHALL, J.]

ERROR to review a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Affirmed.*

The judgment in question is one refusing to discharge the plaintiff in error in *habeas corpus* proceedings.

Plaintiff in error was charged in, due form of law, in the district court of Milwaukee county, a tribunal having jurisdiction of infractions of general state police regulations occurring in said county, with having violated ch. 490, Laws of 1905, by peddling without a license. Such proceedings

were had in the action in such court that he was in due form found guilty and sentenced to pay a fine of $25 and the costs of prosecution, taxed at $4.33, and to stand committed to the house of correction in Milwaukee county until payment should be made, not exceeding in all sixty days. He was imprisoned accordingly and thereupon sued out a writ of *habeas corpus* before a court commissioner to obtain his release upon the ground that the law aforesaid was void. Such proceedings were then duly had before the circuit court for Milwaukee county that the commissioner's decision was reversed and the accused was remanded to the former custody.

The cause was submitted for the plaintiff in error on the brief of *John F. Donovan,* attorney, and *Adolph Huebschmann,* of counsel, and for the defendant in error on that of the *Attorney General, A. C. Titus,* assistant attorney general, and *Dorr, Gregory & Stiglbauer,* of counsel.

MARSHALL, J. The point is made that a *habeas corpus* proceeding is not the proper remedy to test the validity of a judgment under which a person is restrained of his liberty. In support thereof the general principle is invoked, that the writ of *habeas corpus* only reaches jurisdictional error; that it cannot properly be used so as to serve the mere purpose of a writ of error. The cases so holding in this and other courts are very numerous. The principle is so elementary that it is useless to refer to authorities in respect thereto.

Before applying the conceded rule to a case like this, one where the validity of the judgment is involved, it is necessary to determine whether the error claimed to exist is jurisdictional or judicial. In the absence of any statute extending the scope of the writ the test in respect thereto is this: Could the court under any circumstances of the case have properly rendered a judgment against the accused? If jurisdiction of the person is obtained so that the court might under some circumstances render a valid judgment in the cause against

the accused, but error is committed in reaching a final result, then such error is judicial, reviewable only upon a writ of error. If the court, though having no jurisdiction to render judgment against the accused at all, renders judgment, it is void. In the latter circumstances a writ of *habeas corpus* is proper. Speaking on the subject in *State ex rel. Welch v. Sloan,* 65 Wis. 647, 651, 27 N. W. 616, the court said:

"It is only when the court pronounces a judgment in a criminal case which is not authorized by law under any circumstances, in the particular case made by the pleadings, whether the trial has proceeded regularly or otherwise, that such judgment can be said to be void, so as to justify the discharge of the defendant held in custody by such judgment."

The rule stated is about as old as the writ itself. It is stated thus in Bac. Abr. Hab. Corp. B. 10:

"If the commitment be against law, as being made by one who had no jurisdiction of the cause, or for a matter for which by law no man ought to be punished, the courts are to discharge."

So also Chief Justice ABBOTT in *Rex v. Suddis,* 1 East, 306, phrased the principle this way:

"It is a general rule that, where a person has been committed under the judgment of another court of competent criminal jurisdiction, this court [the King's Bench] cannot review the sentence upon a return to a *habeas corpus.*"

That this court has gone further in favor of the use of the writ than the quoted language would warrant is not material to this case. *In re Staff,* 63 Wis. 285, 23 N. W. 587, suggests this remark. That case, *In re Pierce,* 44 Wis. 411, and perhaps others, deal with excess of jurisdiction and are referable to sec. 3428, Stats. (1898).

It has been a mooted question in some jurisdictions whether in case of a conviction under an unconstitutional law the judgment rendered thereon can be impeached in a *habeas*

*corpus* proceeding to vindicate the right of the prisoner to his liberty, but the authorities are in general harmony that in such a case the trial court obtains no jurisdiction whatever; that the judgment rendered is utterly void, and so can be collaterally called in question. *Ex parte Siebold,* 100 U. S. 371, is a leading case on the subject. In discussing the subject the court said:

"The validity of the judgments is assailed on the ground that the acts of Congress under which the indictments were found are unconstitutional. . . . An unconstitutional law is void. . . . An offense created by it is not a crime. A conviction under it is not only merely erroneous, but is illegal and void. . . . The question of the court's authority to try and imprison the party may be reviewed on *habeas corpus.* . . . We think so, because, if the laws are unconstitutional and void, the circuit court acquired no jurisdiction of the causes."

The foregoing rules the point under discussion in favor of the plaintiff in error unless it be otherwise by reason of the statutory regulation of the writ of *habeas corpus,* secs. 3408, 3427, Stats. (1898), providing that

"No person shall be entitled to prosecute such writ who shall have been committed or detained by virtue of the final judgment or order of any competent tribunal of civil or criminal jurisdiction or by virtue of any execution issued upon such order or judgment; . . . "

"The court or judge must make a final order to remand the prisoner if it shall appear that he is detained in custody . . . by virtue of the final judgment or order of any competent court of civil or criminal jurisdiction or of any execution issued upon such judgment or order."

If the legislature purposed by such sections to take away from circuit courts the common-law power exercisable by use of the writ of *habeas corpus* it misconceived its authority. The circuit courts take their power in the matter from the constitution, not from the legislature. They look only to the organic act for the source of their authority, the same as the

legislature must do for limitations upon its field of action. The former always bow to the latter branch of the government as regards reasonable regulations of the exercise of their constitutional authority, but guard with strictest care against any invasion thereof. A law providing that the writ of *habeas corpus* cannot issue to vindicate the right to personal liberty where the imprisonment, though it be pursuant to a judgment of a court and with all the forms of law, is nevertheless void, would be clearly such an invasion.

Speaking on this subject under circumstances, as regards constitutional and statutory provisions, similar to those we have here, the New York court of appeals in *People ex rel. Tweed v. Liscomb,* 60 N. Y. 559, said substantially this: The statute regulates the exercise of jurisdiction in the use of the writ of *habeas corpus,* but the writ cannot be abrogated nor its efficiency at all curtailed by legislative action. The common-law scope of the writ as to remedying restraints upon personal liberty after judgment cannot, "until the people voluntarily surrender the right to this, the greatest of all writs, by an amendment of the organic law, be placed beyond its reach and remedial action." The writ is effective to test the jurisdiction of any court assuming by its judgment, or otherwise, to deprive one of his personal liberty.

It is considered that the legislative enactments under consideration were adopted in harmony with the views above expressed. Their prohibitive features as to inquiring into the validity of a judgment in *habeas corpus* proceedings are but mere declarations of the common law, and are in harmony with the constitution. They are to the effect that the writ shall only be used to correct jurisdictional error resulting in the wrongful restraint of personal liberty. When a judgment of any court is based on an unconstitutional law it has no legitimate basis at all; it is not a judgment of a competent tribunal within the meaning of sec. 3408 of the Statutes, or of a "competent court" within the meaning of those words

in sec. 3427 of the Statutes. The law, so called, being unconstitutional there is no law in fact, hence no jurisdiction to give force thereto; no legitimate jurisdiction over the subject matter or of the person, within the meaning of the decisions. That is in harmony with *State ex rel. Welch v. Sloan,* 65 Wis. 647, 27 N. W. 616; *State ex rel. Durner v. Huegin,* 110 Wis. 189, 85 N. W. 1046; and *In re Shinski,* 125 Wis. 280, 104 N. W. 86, and many other cases in our Reports that might be referred to.

Keeping in mind that no court can obtain jurisdiction of the person and subject matter in a prosecution under an unconstitutional law, and the expression often used that "the writ of *habeas corpus* does not reach beyond the commitment when the person in custody is detained by virtue of a final judgment or order of a court having jurisdiction of the subject matter and the person," it will readily be seen that the exception suggested in such expression covers the case of a judgment which is without any validity whatever because wholly referable for a basis to an unconstitutional law.

It is conceded that the law in question is valid and the conviction of plaintiff in error thereunder was proper if such law be not fatally discriminatory, in that it imposes burdens upon one class of persons greater than upon others under substantially the same condition, thus offending against the equality clauses of the state and national constitutions.

That there may be legitimate classification for purposes of police regulation and occupation taxes is conceded. So whether the law is such a regulation or such a taxing enactment or partakes of the nature of both is not material.

We are referred to numerous adjudications of this and other courts for the legal test of constitutional classification. The time is past for profitable discussion of that subject or even an extended citation of authority in respect thereto. The rule on the subject has been so often and so definitely stated as to now be regarded as elementary. It may ordi-

narily be applied without serious difficulty to any particular situation as it arises for consideration. This or equivalent language has been commonly used in phrasing the rule here:

"All classification must be based upon substantial distinctions which make one class really different from another.

"The classification adopted must be germane to the purpose of the law.

"The classification must not be based upon existing circumstances only; it must not be so constituted as to preclude addition to the number included within a class.

"To whatever class a law may belong, it must apply equally to each member thereof.

"The characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation." *State ex rel. Risch v. Trustees,* 121 Wis. 44, 54, 98 N. W. 954.

The law in question (ch. 490, Laws of 1905) provides that as a condition of engaging in the occupation of hawker or peddler within this state a license shall be obtained as provided in such chapter for which the candidate

"shall pay into the state treasury an annual license fee, as follows: Where he shall use in such business or occupation a wagon or other vehicle, drawn by two or more horses, or other beasts of burden, or automobile or other vehicle or conveyance propelled by any mechanical power, the sum of seventy-five dollars; where he shall use in such business or occupation a wagon or other vehicle, drawn by one horse, or other beast of burden, the sum of forty-five dollars; where he shall use in such business or occupation a push or hand cart, or other vehicle not drawn by horses, or other beasts of burden, the sum of thirty dollars; and where he shall conduct such business on foot by means of pack, basket or other means for carrying merchandise on foot, the sum of twenty dollars."

Thus it will be seen that all persons following the occupation of hawker or peddler are placed in a class by themselves. So far, the classification is admittedly legitimate. It is sanctioned by *State v. Whitcom,* 122 Wis. 110, 99

N. W. 468, and authorities generally. But it is contended that the subclassification offends against the rule indicated, rendering the law void.

In considering the subject we must bear in mind that the policy of classification is a matter wholly within legislative discretion, and that whether there is room for the classification made in any given case is primarily a legislative question and can never become a judicial one except for the purpose of determining, in any given situation, whether legislative action passed the boundaries of reason, reasonable doubts to be resolved in the negative.

The purpose of regulation of the occupations in question is to minimize the mischief commonly supposed to be specially liable to flow from the operations of persons engaged therein. Such purpose has been universally held to warrant laws of the character of the one under consideration as to its general features. *Morrill v. State,* 38 Wis. 428; Freund, Police Power, § 289; *State v. Whitcom, supra.*

Now as regards the element of regulation as well as that of taxation it would seem that there is a very wide distinction between those members of the general class who operate in such a way as to be likely to come in business contact with many persons and conduct many business operations involving large sums of money and those so equipped as to be liable to meet a much smaller number of persons and conduct a much less number of transactions involving much smaller sums of money.

The exaction as a police regulation being to guard against the mischiefs to be apprehended and the difficulties in remedying such mischiefs, there is good reason to make the burden correspond in some fair degree to that situation. The distinction referred to is quite as significant when the matter is viewed from the standpoint of taxation.

So it would seem very plain that there are substantial distinctions between the subclasses named in the law, making

one really different from the other. The classification is germane to the purposes of the law, because it aims at grading the license fees as near as practicable according to the harm to be apprehended and the magnitude of the business conducted. For the reasons stated the characteristics of each subclass may well be said to be so far different from those of others as to reasonably require difference in legislative treatment. In short, all of the calls for legitimate classification seem to be satisfied.

The subclassification, as here, of the members of a particular occupation, when substantial reasons exist therefor, has been uniformly sustained. The subject was so fully discussed in *State v. Evans,* 130 Wis. 381, 110 N. W. 241, that little more, if anything, need be said on the subject. Authorities justifying such subclassification are very numerous. The following are but a few of them: *Morrill v. State, supra; Nunnemacher v. State,* 129 Wis. 190, 108 N. W. 627; *People v. Thurber,* 13 Ill. 554; *Slaughter v. Comm.* 13 Grat. 767; *East St. Louis v. Wehrung,* 46 Ill. 392; *County of Amador v. Kennedy,* 70 Cal. 458, 11 Pac. 757; *Ex parte Heylman,* 92 Cal. 492, 28 Pac. 675; *Smith v. Louisville,* 6 S. W. 911, 9 Ky. Law Rep. 779; *Singer Mfg. Co. v. Wright,* 33 Fed. 121.

No reason which appeals very strongly to our judgment is advanced why peddlers should not be classified, as in the law in question, according to their facilities for going from place to place and carrying their wares. The perils to be guarded against in respect to the occupation and the contributions that may reasonably be required to the public revenues, strongly suggest, if they do not demand, such classification. Certainly the legislature, within the boundaries of reason, may well have thought that a person traveling about the country plying the vocation of a peddler with an equipment consisting of a span of horses and a wagon should, both as a matter of police regulation and taxation, pay a greater li-

cense fee than a person plying the same trade but traveling about from place to place on foot. Not because the former would be more liable to be dishonest than the latter, but because of the greater opportunity and liability thereof in the one case than in the other, and the corresponding greater liability in the one case than in the other of the harm, if committed, being difficult of redress or going entirely without remedy; again, not because the person, as such, traveling with a team should be taxed more than one traveling on foot, but, since the one in all reasonable probability would conduct a much greater business than the other, the tax exaction should bear some practical relation thereto.

While we have discussed the legitimacy of the classification here involved as an original matter it seems to have been practically settled in *Morrill v. State,* 38 Wis. 428. The law there under consideration (ch. 72, Laws of 1870) had nearly the same features as those we now have. The same is true as to the law involved in *State v. Whitcom,* 122 Wis. 110, 99 N. W. 468, and though such law was condemned, neither directly nor by the reasoning does the condemnation touch such features.

A reference to statutes elsewhere shows that, as a rule, the license fee exacted from hawkers or peddlers is graded substantially as here, and in no instance, so far as we can discover, has the classification been condemned. The statute of Missouri (Ann. Stat. 1906, § 8867) is a fair type of the enactments on the subject. It provides that peddlers shall pay license fees as follows:

"First, if the peddler travel and carry his goods on foot, three dollars for every period of six months; second, if one or more horses or other beasts of burden, ten dollars for every period of six months; third, if a cart or other land carriage, twenty dollars for every period of six months; fourth, if in a boat or other river vessel, at the rate of one dollar per day for any period not less than five days. . . ."

We need not further extend the discussion. No valid reason seems to exist for holding the law under which plaintiff in error was convicted unconstitutional, and, therefore, the judgment must be affirmed.

*By the Court.*—Judgment affirmed.